**CROWN CENTRAL PETROLEUM CORPORATION, Plaintiff-Appellee,**

v.

**COSMOPOLITAN SHIPPING CO., INC., Defendant-Appellant.**

No. 397, Docket 78–7367.

United States Court of Appeals, Second Circuit.

Argued Jan. 15, 1979.

Decided June 15, 1979.

---

Richard G. Ashworth, New York City (Haight, Gardner, Poor & Havens, New York City, Bert I. Weinstein, New York City, of counsel), for defendant-appellant.

Donald M. Waesche, Jr., New York City (Bigham, Englar, Jones & Houston, New York City), for plaintiff-appellee.

Before WATERMAN, GURFEIN and VAN GRAAFEILAND, Circuit Judges.

WATERMAN, Circuit Judge:

Cosmopolitan Shipping Co., Inc. (Cosmopolitan) appeals from a judgment entered in the United States District Court for the Southern District of New York (Cannella, J.) awarding Crown Central Petroleum Corp. (Crown Central), as owner of a cargo of Algerian blend crude oil, damages for a partial loss of cargo and a recovery for any contributions in general average and salvage that it may be compelled to pay as a result of the stranding of the T/V Ellen Conway. After a one-day bench trial on the issue of liability, the district court found that Cosmopolitan as the vessel's managing agent "had a most substantial measure of control over the operation of the vessel," therefore became the "employer" of the officers and crew, and hence was liable for damages caused by the vessel's negligent navigation.

Cosmopolitan argues on appeal that the district court erred as a matter of law in concluding that a managing agent, having a substantial measure of control over the operation of a vessel, was the owner pro hac vice of the vessel and therefore was liable for damages caused by the vessel's negligent navigation. We agree with appellant and reverse the district court.

Crown Central was the owner and consignee of crude oil cargo, laden in good order and condition on board the T/V Ellen Conway at the port of Arzew, Algeria, for delivery to Houston, Texas. Shortly after departure, however, the vessel grounded and it became necessary to charter another vessel to complete the voyage. As a result of the casualty a portion of the cargo was lost or damaged. The vessel owners, Ellen Tankers, Inc. (Ellen Tankers), brought suit in the High Court of Justice, London, England, against the charterer of the ship, Easco, Inc., and against Crown Central seeking contribution in general average occasioned by efforts at refloating the ship and for the transportation of the cargo to its destination. This action was settled on October 11, 1978, when Crown Central agreed to pay a percentage of the general average contribution. That payment is part of Crown Central's claim for damages against Cosmopolitan in the present action.

There was substantially no dispute as to the facts in the court below. The pre-trial order entered on consent of the parties provided that "[t]he stranding and consequent damage or loss of [Crown Central's] cargo

was caused as a result of the negligence of the officers of the T/V Ellen Conway in failing to properly navigate the vessel." It was further stipulated that Cosmopolitan was not a party to the contract of carriage and therefore was not a "carrier" as that term is used in the United States Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1301(a) (1977). Cosmopolitan, however, if it is deemed to be the employer of the officers and crew by virtue of its control over the operation of the vessel pursuant to the management agreement, asserts the right to avail itself of the carrier's COGSA defenses. As set forth in the pre-trial order, the sole issue before the district court was whether Cosmopolitan was liable in tort for the damages incurred by Crown Central which resulted from the stranding of the T/V Ellen Conway.

Cosmopolitan and Ellen Tankers entered into an oral agreement with reference to the management of the T/V Ellen Conway. The oral agreement incorporated the terms of a form management agreement in writing which had previously been used by Cosmopolitan. Pursuant to their agreement, Cosmopolitan, among its contractual responsibilities, was to " '[e]quip, victual and supply' the vessel, 'appoint the masters' of the vessel, and 'procure, for employment by the masters, . . . full complements of officers and crew'—all subject to the approval of Ellen Tankers, Inc."; but the master was to be the employee of Ellen Tankers and the officers and crew were to be the employees of the master.

In fulfillment of its management obligations Cosmopolitan arranged, through a crewing agent in Taiwan, for the employment, on behalf of Ellen Tankers, of the T/V Ellen Conway's master, officers, and crew. Ellen Tankers advanced funds to Cosmopolitan for the payment of the crew's wages and allotments, which funds were forwarded to the crewing agent and/or master for disbursement. Funds so advanced were placed in a "Tanker's Management Account" established and controlled by Cosmopolitan and out of which all operating expenses were paid. The wages of the crew were expenses of Ellen Tankers and were so carried on its financial statements. Under the agreement, Ellen Tankers, as vessel owner, provided all operating funds for running the ship, supervised all chartering activities and all of the ship's income producing activities, and controlled all drydocking decisions and all capital improvements to the ship.

As is common in the shipping industry, Cosmopolitan and Ellen Tankers are owned by the same persons and have had the same officers and directors at all relevant times. The parties, however, stipulated in the pre-trial order that Ellen Tankers and Cosmopolitan "are separate and distinct corporate entities." Although the district court stated that it drew no negative inferences from the identity of ownership between Cosmopolitan and Ellen Tankers, it seems to have relied on that fact in holding that, in an action by a third party, Cosmopolitan rather than Ellen Tankers could be considered to be the employer of the crew. As stated by the district court: "[d]ue to the relationship between Cosmopolitan and Ellen Tankers, Inc., the Court gives little weight to what . . . are the specific terms of the [oral] agreement, especially as such terms affect the rights of outsiders." We note that while it is indeed true, in some instances, that an identity of ownership in two corporations *may* have a bearing on their relationships with third parties, a corporation, absent findings of fraud or bad faith, is entitled to a presumption of separateness from a sister corporation even though both are owned and controlled by the same persons. *Williams v. McAllister Bros., Inc.*, 534 F.2d 19 (2d Cir. 1976); *American Renaissance Lines, Inc. v. Saxis Steamship Co.*, 502 F.2d 674, 677 (2d Cir. 1974). The district court apparently drew support for its conclusion from the fact that Ellen Tankers maintained no permanent place of business in the United States; but this fact, standing alone, is insufficient to overcome the presumption of separateness afforded related corporations.

The district court stated that the issue of which corporation was the employ-

er of the negligent officers depended upon the relationship between Cosmopolitan and Ellen Tankers as that relationship appeared not only from the contract the parties entered into but from their actual conduct as well, citing *Hust v. Moore-McCormack Lines,* 328 U.S. 707, 66 S.Ct. 1218, 90 L.Ed. 1534 (1946). We are in agreement with the district court that the element of control is important in determining the existence of an employer-employee relationship, yet we find the court's reliance on *Hust, supra,* inappropriate here inasmuch as the *Hust* case was specifically overruled in *Cosmopolitan Shipping Co. v. McAllister,* 337 U.S. 783, 794, 69 S.Ct. 1317, 1323, 93 L.Ed. 1692 (1949). The *McAllister* court, construing a general agency agreement similar to the one in the case *sub judice,* stated that:

> The solution of the problem of determining the employer under such a contract depends upon determining whose enterprise the operation of the vessel was. Such words as employer, agent, independent contractor are not decisive . . .
>
> One must look at the venture as a whole. Whose orders controlled the master and the crew? Whose money paid their wages? Who hired the crew? Whose initiative and judgment chose the route and the ports? It is in light of these basic considerations that one must read the contract.

337 U.S. at 795, 69 S.Ct. at 1323-24.

Here the district court based its result upon the evidence that Cosmopolitan arranged for the manning of the ship and had the authority to hire and fire; that the officers and crew were paid out of an account in Cosmopolitan's name (with funds advanced by Ellen Tankers); and that Cosmopolitan, as agent, managed the vessel in a manner characteristic of an owner. However, Ellen Tankers retained chartering authority, the right to designate the route of the vessel, and retained control over all drydocking and capital improvement decisions. These facts, when evaluated under the criteria set forth in *McAllister, supra,* demonstrate that the operation of the T/V Ellen Conway was the enterprise of Ellen Tankers conducted under a typical shipown-er-managing agent relationship. The facts do not support a conclusion that Cosmopolitan had such control over the day-to-day operations of the vessel as to render it the "employer" of the negligent crew members. The non-existence of a written agency agreement between Cosmopolitan and Ellen Tankers may well render the claimed oral agreement between them to be suspect, but that non-existence does not alter the fact that, under the rationale of *McAllister,* Cosmopolitan's conduct was insufficient to make it the crew's employer.

Crown Central relies primarily on the Fed.R.Civ.P. 52(a) "clearly erroneous" standard in urging our affirmance of the lower court decision. Recently, however, this court in *Karavos Compania Naviera S.A. v. Atlantica Export Corp.,* 588 F.2d 1 (2d Cir. 1978), addressed the "clearly erroneous" standard as that standard applied to a finding of the apparent authority of an agent and we concluded that even under a broad reading of the term "findings of fact" as used in Fed.R.Civ.P. 52(a) " 'if an error of law has impaired the judgment of the trial court on a mixed question of law or fact,' the finding should be set aside." 588 F.2d at 8 (citations omitted). In summary, based upon the undisputed facts in the present case we are convinced that the conclusion reached here by the district court is inconsistent with the applicable rule of law as set forth in *McAllister, supra,* and therefore must be set aside. *In re Hygrade Envelope Corp.,* 366 F.2d 584, 588 (2d Cir. 1966).

Inasmuch as our decision on the merits disposes of the entire controversy between the parties, we decline to address the issue of whether the general policy of COGSA would be available to a managing agent if a managing agent were found to be the "employer" of the master and crew.

The judgment of the district court is reversed.