## MCI TELECOMMUNICATIONS CORPORATION, Plaintiff,

v.

## JOHN MEZZALINGUA ASSOCIATES, INC., d/b/a Production Products Company, Defendant.

## JOHN MEZZALINGUA ASSOCIATES, INC., d/b/a Production Products Company, Third–Party Plaintiff,

v.

## ALLTEL CORPORATION and Alltel New York, Inc., Third–Party Defendants.

### No. 93–CV–1342.

United States District Court, N.D. New York.

April 10, 1996.

---

MacKrell, Rowlands & Premo, Albany, NY (Paul A. Levine, of counsel), for Plaintiff.

Hancock & Estabrook, Syracuse, NY (Donald J. Kemple, of counsel), for Defendant/Third–Party Plaintiff.

Hiscock & Barclay, Syracuse, NY (Richard K. Hughes, of counsel), for Third–Party Defendants.

## DECISION and ORDER

SCULLIN, District Judge.

This case concerns the question of liability for long distance telephone calls. The plaintiff, MCI Telecommunications Corporation ("MCI"), a Delaware corporation with its principal place of business in Washington, D.C., is a provider of interstate telecommunications services. Defendant, John Mezzalingua Associates, Inc. d/b/a Production Products Company ("Production"), is a New York corporation with its principal place of business in Manlius, New York.[1] Third-party defendant Alltel New York, Inc. ("Alltel New York"), a New York corporation with places of business in Jamestown and Fulton, New York, is a provider of local telephone services in New York state. Third-party defendant Alltel Corporation ("Alltel"), a Delaware corporation with its principal place of business

---

1. The nature of Production's business is not indi- cated.

in Little Rock, Arkansas, is a holding company and the parent company of Alltel New York. Smith Aff. ¶ 2; Production Ex. R, ¶ 16.

On December 19, 1990, Production subscribed to a central switching service ("Centrex") offered by Alltel New York. The Centrex service was intended to provide telephone features such as intercom, call forwarding, call waiting, and paging—features usually provided by a private branch exchange ("PBX") at the PBX owner's place of business—without the customer having to purchase expensive PBX equipment. The Centrex system was to be operated and maintained by Alltel New York from Alltel New York's central office in Fulton, New York. Production Ex. J.

Also on December 19, 1990, Production purchased from Alltel New York a Viking ACA–2 Automated Attendant, which the parties refer to as a "call transferring unit" or "CTU."[2] It is not clear from the record what functions the CTU performed, but it was installed on Production's premises in Manlius, New York, on January 24, 1991. At that time, the CTU was certified by Alltel New York to be "in good working condition." Third–Party Answer Ex. A.

**2.** The CTU was manufactured by Viking Electronics, Inc., a Wisconsin corporation, and purchased by Alltel New York for resale. Also included in the sales contract was a DBA Smartalk 308 Telephone.

Alltel New York and Production disagree as to which of them initiated the purchase. Alltel New York claims that Production requested the CTU during negotiations relating to Production's subscription to Centrex Service. Young Aff. ¶ 2. Production claims "Alltel [New York] necessitated the CTU purchase by inducing Production to use the Centrex service rather than a PBX." MCI Mem. 10 n. 1. Production does not explain, however, why subscription to the Centrex service "necessitated" purchase of the CTU. Both parties agree that Centrex and the CTU are functionally unrelated to each other.

**3.** Production had previously received long distance telephone service from American Telephone & Telegraph ("AT & T"). Production Ex. J. Production also had an incoming "800" telephone line provided by AT & T.

**4.** The calls were apparently made by the unidentified third party calling Production's incoming 800 line (provided by AT & T) and accessing the outgoing long-distance lines (provided by MCI),

Thereafter, in October 1991, plaintiff MCI Telecommunications Corp. ("MCI") began providing outgoing long distance telephone service to Production.[3] In an invoice dated December 25, 1991, MCI charged Production $160,572.48 for 12,000 calls to the Dominican Republic. Gatto Aff. ¶ 6. Production refused to pay the December 25, 1991 invoice, claiming that the calls were fraudulently made by unidentified third parties.[4]

To recover the charges for the fraudulent calls, MCI filed the complaint in this action on October 21, 1993.[5] On January 4, 1994, Production filed a third-party complaint against Alltel and Alltel New York asserting contract and negligence claims, and seeking indemnification and/or contribution of any amounts found to be owed by Production for the calls.[6]

Presently, plaintiff MCI and third-party defendants Alltel and Alltel New York seek summary judgment as to the defendant Production. Defendant Production requests leave to file an amended answer to MCI's complaint and further requests that the Court stay this action and refer the matter to the Federal Communications Commission ("FCC"). For the reasons set forth below,

either through the Centrex service, or through the CTU. In a memo to MCI dated January 15, 1992, Alltel New York's Communications Consultant, Judy A. Young, requested assistance in getting the calls removed from Production's long distance bill:

> Our mutual customer, Production Products, has a problem with fraudulent toll calls to the Dominican Republic beginning in December. We ... believe these calls are coming from New York City and more than likely from paystations. They have found a way to go back out on the customer's lines and complete calls to the Dominican Republic. We have been able to monitor the calls in our central office and hear them speaking in Spanish.

Production Ex. L.

**5.** Jurisdiction is based upon federal question, 28 U.S.C. § 1331, diversity, 28 U.S.C. § 1332(a)(1), and commerce and antitrust regulations, 28 U.S.C. § 1337.

**6.** Production seeks indemnification/contribution not only for the MCI charges, but for AT & T's charges for the calls on the 800 line. Production paid AT & T $46,652.51 in settlement of the 800 line charges. Third-party Compl.

Production's motions to refer this matter to the FCC and to amend its answer are denied; Alltel's motion for summary judgment is granted; MCI's motion for summary judgment is denied; and Alltel New York's motion for summary judgment is denied.

## DISCUSSION

### I. DOCTRINE OF PRIMARY JURISDICTION

■ Under the Communications Act of 1934 ("the Act"), a carrier such as MCI must file with the FCC a schedule of charges, also referred to as a "tariff schedule" or "tariff." 47 U.S.C. § 203. "The conclusive and exclusive rights and liabilities of carriers are enumerated in their tariffs," including provisions regarding payment of charges for services furnished to customers. *American Tel. & Tel. Co. v. New York City Human Resources Admin.*, 833 F.Supp. 962, 977 (S.D.N.Y.1993).

■ Because this action involves responsibility for payment of long distance telephone charges covered by MCI's tariff, Production argues that the doctrine of primary jurisdiction requires that this case be stayed and referred to the FCC for application of its "specialized expert knowledge." Production Mem. 30. MCI responds that the doctrine of primary jurisdiction should not be invoked where "the agency's position is sufficiently clear." *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 532 F.2d 412, 419 (5th Cir.1976), *cert. denied*, 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977). Alltel and Alltel New York make no argument.

■ "The doctrine of primary jurisdiction allows a federal court to refer a matter extending beyond the 'conventional experiences of judges' or 'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise, and insight." *National Communications Ass'n v. American Tel. & Tel. Co.*, 46 F.3d 220, 222–23 (2d Cir.1995) (quoting *Far East Conference v. United States*, 342 U.S.

570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952)). Courts apply primary jurisdiction to cases involving technical and intricate questions of fact and policy that Congress has assigned to a specific agency. *Goya Foods, Inc. v. Tropicana Products, Inc.*, 846 F.2d 848, 851 (2d Cir.1988).

■ There is no fixed formula for determining whether an agency has primary jurisdiction. However, there are four factors that have generally been the focus of analysis. *National Communications*, 46 F.3d at 223. Those four factors are: (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made. *Id.* at 222.

■ The record before the Court in this case presents no issues involving intricate interpretations or applications of MCI's tariff that would require the FCC's technical or policy expertise. As in *National Communications*, this case "does not involve the statutory reasonableness of the tariff or other abstract concepts." 46 F.3d at 223. This case also presents no issues that are "particularly within the agency's discretion" and no prior application been made to the FCC regarding this matter. There is no danger of inconsistent rulings. *See, e.g. Human Resources*, 833 F.Supp. at 972–78. Thus, the Court finds that the FCC does not have primary jurisdiction over this matter and referral is not necessary.[7]

### II. PRODUCTION'S MOTION TO AMEND ITS ANSWER

In its original answer, defendant/third-party plaintiff Production admits the portion of paragraph seven of the Complaint which alleges that MCI provided service to Produc-

---

**7.** The Court is also required to balance the advantages of applying the doctrine of primary jurisdiction against the potential costs resulting from complications and delay in administrative proceedings. *National Communications*, 46 F.3d at 223. The backlog of cases resulting from the shortage of Judges in this District has already caused some delay in the resolution of this matter, and the Court can see no reason to increase the delay by referring the matter to the FCC.

tion between November 1991 and April 1992.[8] Answer ¶ 4. In its proposed amended answer, Production denies "each and all allegations" of the same paragraph.

Production and MCI disagree as to the significance of the first answer and the proposed change. However, Production's position is clear, and has been throughout. Production does not deny that MCI provided **some** service during the alleged time period; it only denies that MCI "furnished services" (within the meaning of MCI's tariff) for the allegedly fraudulent calls. Production's initial answer to the complaint more accurately represented this position, and permission to amend paragraph four is denied.

■ Production also seeks to add an affirmative defense alleging that the Tariff provisions are "unreasonable and unenforceable," [9] and four "affirmative defenses and counterclaims," seeking: declaratory judgment as to MCI's misconduct; to enjoin MCI from suing Production for the alleged debt; rescission of the "contract" between MCI and Production; and punitive/exemplary damages "of at least $10 million." Proposed Amended Answer ¶¶ 11, 14–28. In support of adding these affirmative defenses and counterclaims to its answer, Production sets forth the same general arguments made in opposition to MCI's motion for summary judgment. These arguments are discussed below.

Rule 15(a) of the Federal Rules of Civil Procedure instructs the Court that "leave [to amend a pleading] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). All of the relief sought by Production (except punitive damages) can be achieved without amending the answer, and Production has not shown that justice would require the assessment of punitive damages against MCI, even if MCI is found to have engaged in willful misconduct. Production's motion to amend its answer is denied.

## III. SUMMARY JUDGMENT

■ Summary judgment is appropriate only when the moving party shows that no genuine issue of material fact exists as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). An unresolved factual issue is one that a reasonable fact-finder could decide in favor of either party. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. It is the moving party's burden to demonstrate that no genuine issue respecting any material fact exists, and all ambiguities must be resolved, and all inferences drawn, in favor of the party against whom summary judgment is sought. *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir. 1994).

## A. ALLTEL'S MOTION FOR SUMMARY JUDGMENT

■ Alltel argues that it is not a party to the contracts between Production and Alltel New York, and seeks summary judgment with respect to Production's breach of contract and warranty claims. "Only those who are parties to a contract may be held liable for a breach of that contract." *Beacon Syracuse Associates v. Syracuse,* 560 F.Supp. 188, 201 (N.D.N.Y.1983) (Munson, C.J.). *See also County of Suffolk v. Long Island Lighting Co.,* 728 F.2d 52, 62 (2d Cir.1984); *Mellencamp v. Riva Music Ltd.,* 698 F.Supp. 1154, 1160 (S.D.N.Y.1988).

■ Production argues that Alltel exercises such control over Alltel New York that

---

**8.** Paragraph 7 of the Complaint states:

MCI provided service to Production from November 1991 to April 1992 under the terms of its Tariff and performed all of the obligations called for by the Tariff. Production, however, failed to meet payment terms required under the Tariff. As a result, on or about April 30, 1992, MCI terminated its services to Production for nonpayment.

Paragraph 4 of the Answer states that Production ADMITS so much of the allegations of paragraph 7 of Plaintiff's Complaint as alleges that

MCI provided service to Production from November 1991 to April 1992 and that MCI no longer provides telecommunication services to Production, but DENIES the remaining allegations of this paragraph.

**9.** This defense is based upon a tentative finding, made by the FCC as part of a proposed rulemaking, that "liability provisions that fail to recognize an obligation by the carrier to warn customers of risks of using carrier services are unreasonable." Production Ex. D.

it should be deemed an instrumentality or agent of the parent company, and the court should "pierce the corporate veil" between the two companies. However, "Courts are reluctant to disregard the separate existence of related corporations by piercing the corporate veil, and have consistently given substantial weight to the 'presumption of separateness.'" *Kashfi v. Phibro–Salomon, Inc.*, 628 F.Supp. 727, 732–33 (S.D.N.Y.1986) (quoting *Crown Central Petroleum v. Cosmopolitan Shpg. Co.*, 602 F.2d 474, 477 (2d Cir.1979)). *See also Carte Blanche Pte., Ltd. v. Diners Club Int'l, Inc.*, 2 F.3d 24, 26 (2d Cir.1993).

This Court has reviewed Production's submissions in support of piercing the corporate veil and finds there is no support for doing so. Further, Production submitted no evidence to support a negligence claim against Alltel. Therefore, Alltel's motion for summary judgment is granted and the third-party complaint is dismissed as against Alltel Corporation.

## B. MCI's MOTION FOR SUMMARY JUDGMENT

In seeking summary judgment, MCI argues that, under MCI's tariff, Production is liable for the calls made over the long distance lines furnished by MCI, regardless of whether the calls were fraudulently made by a third party. Section B–7.01 of MCI's Tariff provides:

> The customer is responsible for payment of all charges for services furnished to the customer or its joint or authorized users. This responsibility is not changed by virtue of any use, misuse, or abuse of the customer's service or customer-provided systems, equipment, facilities, or services interconnected to the customer's service, which use, misuse, or abuse may be occasioned by third parties, including, without limitation, the customer's employees or other members of the public.

MCI Reply Mem. Ex. C.

Production raises a number of arguments in opposition to summary judgment. Pro-

duction argues that a genuine issue of material fact remains as to the "origin" of the calls because it is unclear whether the calls gained access to the MCI long distance line(s) via the Centrex service, located in Alltel New York's central offices, or the CTU, located on Production's premises. *See Human Resources*, 833 F.Supp. at 970–74 (discussing whether calls "originated" at plaintiff's number so as to fall under AT & T's tariff).

Unlike AT & T's tariff in *Human Resources*, however, MCI's tariff does not make customers responsible only for calls that "originate at the customer's number." The customer, under MCI's tariff, is responsible for "services furnished to the customer." Further, MCI's tariff states that liability for charges is unaffected by use, misuse, or abuse of "services interconnected to the customer's service" and services located on the customer's premises. Therefore, the exact method of access to MCI's lines, although disputed, is immaterial to the determination of whether MCI "furnished services" within the meaning of its tariff.

Next, Production argues that there is a genuine issue of material fact as to whether services were furnished to Production by MCI within the meaning of MCI's tariff. Production contends that the telephone bills it received from MCI must be erroneous because of the sheer volume of calls, some of which occur simultaneously on one line.[10] Production Ex. B. Therefore, according to Production, the telephone bills do not provide sufficient proof that the fraudulent calls were actually made on the telephone lines provided to Production by MCI. Production Mem. 10–11.

The invoices to Production do show multiple calls occurring on the same telephone line, but MCI provides no explanation as to how this could occur. Instead, MCI cites court documents from Production's state court suit against its insurance carrier, as well as Production's pleadings in the present

---

10. Production also alleges that some of the calls were not invoiced until more than 30 days after they were made. MCI does not deny the allegation or offer an explanation, but replies only that "there is no legal or Tariff imposed duty for MCI to bill for calls within a specified time." MCI Reply Mem. 16.

action, in which Production allegedly "admits" knowing how the disputed phone calls occurred and sets forth explanations. MCI argues that "[a]ll of Production's assertions about possible flaws in MCI's billing systems are baseless in light of Production's own unequivocal admissions." MCI Reply Mem. 12–16. This Court disagrees. At the very least, Production's allegations raise an issue regarding the amount of damages, if any, owed to MCI.

Finally, Production argues that MCI is not entitled to summary judgment because the fraudulent calls were the result of MCI's willful misconduct, in that MCI failed to warn Production of the prevalence of this type of phone fraud or provide means of preventing such fraud.[11] Willful misconduct by MCI, if proven, would discharge Production's liability for fraudulently made telephone calls. *See MCI Telecommunications Corp. v. Management Solutions, Inc.,* 798 F.Supp. 50, 52 (D.Me.1992), *quoted in Human Resources,* 833 F.Supp. at 974.

 The definition of willfulness includes "the intentional omission of some act, with knowledge that such omission will probably result in damage or injury, or the intentional omission of some act in a manner from which could be implied reckless disregard of the probable consequences of the omission." *Human Resources,* 833 F.Supp. at 974 (quoting *Berner v. British Commonwealth Pac. Airlines, Ltd.,* 346 F.2d 532, 536–37 (2d Cir. 1965), *cert. denied,* 382 U.S. 983, 86 S.Ct. 559, 15 L.Ed.2d 472 (1966)).

MCI argues only that failure to warn of potential fraud is not willful misconduct because, as a matter of law, MCI had no duty to provide such a warning. Although the holding of the district court in *Human Resources* supports MCI's argument,[12] this

Court declines to make such a finding as a matter of law. According to the above definition of willful misconduct, if MCI intentionally omitted to inform Production that the services provided by MCI were vulnerable to the type of fraudulent activity alleged here, and knew or should have known that such an omission would probably result in damage or injury to Production, then MCI's failure to warn Production may amount to willful misconduct. This would be true regardless of whether MCI had a general duty to warn its customers of the possibility of remote access fraud.

The court finds that MCI has not met its burden of establishing that there are no material issues of fact as to services "furnished" to Production within the meaning of MCI's tariff, or as to whether MCI's actions amounted to willful misconduct. *See Gallo,* 22 F.3d at 1223. Therefore, MCI's motion for summary judgment is denied.

## C. ALLTEL NEW YORK'S MOTION FOR SUMMARY JUDGMENT

In the third-party complaint, Production asserts three claims against Alltel New York and Alltel. In the first, Production demands indemnification and/or contribution from the third-party defendants, based upon alleged "carelessness, recklessness, negligence or other culpable conduct, breach of contract, and/or breach of warranty." Compl. ¶ 10. The second cause of action seeks indemnification and/or contribution based upon breach of a December 19, 1990 contract and/or breach of warranty with respect to that contract. The third cause of action seeks to recover the monies paid by Production to AT & T for the fraudulent use of the 800 line, based, again, upon the third-party defendants' alleged "negligence, misfeasance, malfeasance, lack

---

**11.** Production argues that MCI "was well aware of the epidemic of toll fraud which began in the mid–1980's and was rampant when third-parties allegedly broke into Production's lines in late 1991" and "failed to warn Production of the fraud and of the means of preventing it." Production Mem. 1–2. Production also argues that "MCI's statements and the literature furnished to Production established that MCI made some attempts to notify customers and therefore assumed the duty to do so" and implies that MCI intentionally concealed the prevalence of toll

fraud. Production Mem. at 16, 19 (Docket # 31); Production Ex. C.

**12.** The Court in *Human Resources* held that "[t]he Tariff applicable to the instant action does not place a duty upon AT & T to warn its … customers of the possibility of remote access fraud nor does the [defendant] provide any argument as to how the Tariff imposes such a duty." 833 F.Supp. at 977.

of due care, breach of contract and/or breach of warranty." Compl. ¶ 17.[13] Neither side addresses Production's claims in the context of indemnification or contribution, but only in terms of negligence and breach of contract or warranty.[14]

### 1. Summary Judgment on Breach of Contract Claim:

█ Production and Alltel New York disagree as to which contract is the subject of Production's claims. Alltel New York insists that the contract which Production claims was breached is the sales contract for the CTU. Production responds that there were two other contracts between Production and Alltel New York upon which its claim might rest: the agreement subscribing Production to Alltel New York's Centrex Service (also signed on December 19, 1990) and an agreement for servicing the CTU.[15]

Production claims that it disconnected the CTU and that the unauthorized calls continued, implying that the problem lay with the Centrex Service. Mezzalingua Aff. ¶ 16. Production's president, Daniel Mezzalingua, also claims that he was told by Judy Young, Alltel New York's Communications Consultant, that Alltel New York had put blocks on the Centrex system to prevent access to Production's dial tone by unauthorized third parties. Mezzalingua Aff. ¶ 20, Ex. M. Alltel New York, on the other hand, contends that the calls were, and could only have been, made through the CTU, and that when the CTU was replaced with a live operator, the toll fraud ceased. Young Reply Aff. ¶¶ 3–5.

The Court finds that a material issue of fact remains as to how the fraudulent calls were made, and therefore cannot determine which contract to evaluate on a breach of

contract claim. Summary judgment on this claim is accordingly denied.

### 2. Summary Judgment on Negligence Claim:

█ Alltel New York further argues that Production's negligence claim is barred by New York law. "New York law holds that a negligence action seeking recovery for economic loss will not lie." *County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2d Cir.1984). However, an exception to this "economic loss rule" exists, under limited circumstances, for claims of negligent performance of contractual services. *Human Resources*, 833 F.Supp. at 983.

As noted above, it is not clear whether the CTU sales contract (a contract for the provision of goods) or the Centrex Service contract (a contract for provision of services) is implicated in this case. If it is the CTU sales contract, Production's claim of negligence will be barred. If it is the Centrex Service contract, however, Production may be able to prove that the contract was negligently performed. Because a material issue of fact remains as to which contract is applicable, summary judgment on Production's negligence claim is also denied.

### 3. Summary Judgment as to Supplemental Jurisdiction:

█ Finally, Alltel New York argues that Production's claim for recovery of the $46,-652.51 paid to AT & T in settlement of charges should be dismissed because this court lacks subject matter jurisdiction. Alltel New York argues that Production's prior payment to AT & T does not form a part of the case and controversy between MCI and Production, and thus the Court should decline to exercise supplemental juris-

---

**13.** Jurisdiction is based upon diversity, 28 U.S.C. § 1332, and supplemental jurisdiction, 28 U.S.C. § 1367.

**14.** Production accuses Alltel New York of the same type of misconduct alleged against MCI relative to MCI's summary judgment motion, arguing that "[f]raud vitiates the consequential damage exclusion provision of the contract for the CTU, if it should be found that contract applies, and the consequential damage exclusion [in that contract] is unenforceable because of

unconscionability and estoppel." Production Mem. 9–10 (Docket # 55). The Court presently has insufficient evidence before it to determine which contract is applicable, and declines to address these arguments at this time.

**15.** The CTU service agreement, however, did not take effect until January 24, 1992, more than a year after the fraudulent calls to the Dominican Republic had commenced, and thus could not form the basis for a breach of contract claim.

diction over that claim. However, the calls that were the subject of AT & T's charges to Production were apparently part of the process by which the unidentified third parties were able to place calls to the Dominican Republic, and are thus sufficiently related to MCI's claims to warrant the exercise of supplemental jurisdiction. 28 U.S.C. § 1367(a). Further, Alltel New York has not alleged that any of the factors in § 1367(c) are present so as to warrant the Court's rejection of supplemental jurisdiction over Production's claims.[16]

The Court finds that Alltel New York has not met its burden of proving that no material issue of fact exists regarding Production's claims. *See Gallo*, 22 F.3d at 1223. Therefore, Alltel New York's motion for summary judgment is denied.

**WHEREFORE,** pursuant to the above decision, it is hereby

**ORDERED** that defendant/third-party plaintiff's motions to amend its answer and/or refer this matter to the FCC are **DENIED,** and it is further

**ORDERED** that third-party defendant Alltel Corporation's motion for summary judgment is **GRANTED,** and the third-party complaint is **DISMISSED** as against Alltel Corporation. It is further

**ORDERED** that plaintiff's motion for summary judgment is **DENIED,** and it is further

**ORDERED** that third-party defendant Alltel New York, Inc.'s motion for summary judgment is **DENIED.**

**No jury demand was made.**

**IT IS SO ORDERED.**

---

**16.** Alltel New York also argues that subject matter jurisdiction is lacking because there is no diversity of citizenship between Production and Alltel New York. However, diversity of citizenship between these two parties would only be required if original jurisdiction over MCI's claims against Production were based solely on 28 U.S.C. § 1332. *See* 28 U.S.C. § 1367(b). That is not the case.