**NEW YORK STATE ELECTRIC
and GAS CORP., Plaintiff,**

v.

**NEW YORK INDEPENDENT
SYSTEM OPERATOR,
INC., Defendant.**

No. CIV00–CV1526(HGM/GJD).

United States District Court,
N.D. New York.

Oct. 1, 2001.

Hinman, Howard Law Firm, Binghamton, NY (James S. Gleason, of counsel), Vinson, Elkins Law Firm, Washington, DC (Michael J. Henke, pro hac vice, of counsel), for Plaintiff.

Hunton, Williams Law Firm, New York City (Joseph J. Saltarelli, of counsel), for Defendant.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Senior District Judge.

### INTRODUCTION

Currently before the court is defendant's motion to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 21. Plaintiff opposes the motion. *See* Dkt. No. 23. For the following reasons, defendant's motion is denied without prejudice and the action is hereby stayed for 12 months.

### BACKGROUND

Plaintiff, New York State Electric & Gas Corporation ("NYSEG"), is a power distribution company incorporated in the State of New York with its principal place of business in Binghamton, New York. NYSEG purchases, transmits and distributes electric power to retail customers in Eastern, Central and Western New York State. Defendant, New York Independent System Operator ("NYISO"), is a not-for-profit corporation organized under the laws of New York State. NYISO's corporate existence is the result of an attempt to restructure the electric energy industry and foster competition between power generators. It was created in 1999 after power corporations, like NYSEG, agreed to surrender operational control of their transmission facilities to NYISO. Control of these facilities was relinquished pursuant to a contract known as the Independent System Operator Agreement ("ISO Agreement").

Following its creation, NYISO assumed primary responsibility for administering the purchase of electric energy from power generators and its sale to distributers such as NYSEG. NYSEG purchases electric power from NYISO pursuant to the New York Independent System Operator Market Administration and Control Area Services Tariff ("ISO Services Tariff"). NYSEG and NYISO also entered into a Services Agreement called the ISO Services Contract, which incorporates the terms of the ISO Services Tariff. Presumably, the ISO Services Contract particularizes the duties and obligations of each contracting party regarding the sale and transmission of electric energy.

NYSEG also purchases electric reserves from NYISO to meet its emergency de-

mand for electric energy.[1] These purchases are governed by what is termed the ISO Open Access Transmission Tariff ("ISO OATT"). The terms of the ISO OATT are specifically incorporated into an agreement between the litigants which is called a Service Agreement for Firm Point to Point Transmission Service ("OATT Contract"). Under the ISO OATT agreement, NYSEG must purchase reserve electric energy from NYISO. There are several categories of reserve electric power including what is called "10–Minute Reserves."[2] NYISO operates the Reserves market by purchasing Reserves a day in advance and upon demand through a bidding process. NYSEG pays NYISO a portion of the cost for Reserves energy pursuant to the terms established in the ISO OATT agreement and set forth in the ISO Services Tariff.

According to NYSEG, the ISO Services Tariff requires NYISO to deliver the least costly mix of electric power, including reserve energy, using good utility practice. In the instant action, NYSEG's claims relate to the rates it paid NYISO for 10–Minute electric energy reserves (hereinafter "Reserves"). In its simplest terms, plaintiff accuses NYISO of mismanaging the Reserves market by failing to use "good utility practices." As a consequence of NYISO's alleged ineptitude, plaintiff contends that it was overcharged for Re-

serves capacity to the tune of $6.635 million.

NYSEG instituted the instant lawsuit claiming that NYISO breached the ISO Services Contract, the OATT Contract and the ISO Agreement.[3] It also insists that defendant: (1) breached its fiduciary duty to manage the market for wholesale electric power and Reserves in New York State, (2) negligently operated the wholesale and Reserves electric power markets by failing to exercise reasonable and ordinary care, (3) negligently performed contracted for services; and (4) was grossly negligent. In compensation for these harms, NYSEG seeks to recover actual damages for the amount overcharged ($6.635 million), punitive damages and reasonable attorneys' fees.

After a brief period of inactivity, NYISO filed the instant motion to dismiss this action pursuant to either the primary jurisdiction doctrine, or the filed rate doctrine. Defendant also contends that plaintiff's claims should be dismissed for failure to state a claim. Plaintiff, obviously, contends that neither doctrine is applicable herein and insists that it has stated claims for which relief can be granted. The court will not address the majority of these issues, but will discuss the primary jurisdiction issue alone.

## I. *Primary Jurisdiction*

■ "The doctrine of primary jurisdiction allows a federal court to refer a mat-

---

**1.** Apparently, power distribution companies project the amount of electric energy that they must purchase to meet daily power demands. Reserve electric power is required when actual demand exceeds the projected amount.

**2.** 10–Minute reserve energy is standby production capacity that is available to produce electric power within 10 minutes. There are two types of 10–minute reserves; spinning and non-spinning reserve capacity. To meet New York State's reliability standards, NYISO

must obtain 1200 Megawatts of reserve capacity per day.

**3.** Plaintiff originally instituted this action in New York State Supreme Court, however, it was transferred to this court by the NYISO. Subsequently, NYSEG filed a motion to remand the action pursuant to 28 U.S.C. § 1447, claiming a lack of subject matter jurisdiction. On January 19, 2001, the court found that the action had been properly removed and denied plaintiff's motion. *See* Dkt. No. 12.

ter extending beyond the 'conventional experiences of judges' or 'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise, and insight." *Nat'l Communications Ass'n v. AT & T Co.*, 46 F.3d 220, 222–223 (2d Cir.1995) (*quoting Far East Conference v. United States*, 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952)). The doctrine is "designed to minimize potential conflicts between a court and an administrative agency which may arise because of 'the court's lack of expertise with the subject matter of the agency's regulation or from contradictory rulings by the agency and the court.' " *VoiceStream Wireless Corp. v. All U.S. Communications*, 149 F.Supp.2d 29, 34 (S.D.N.Y.2001) (*quoting MCI Communications Corp. v. AT & T Co.*, 496 F.2d 214, 220 (3d Cir.1974)).

The threshold question in a primary jurisdiction case is "whether both the court and an agency have jurisdiction over the same issue." *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 59 (2d Cir.1994). Where mutual jurisdiction exists, referral to an agency is appropriate " 'even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined.' " *VoiceStream*, 149 F.Supp.2d at 34 (*quoting Far East Conference*, 342 U.S. at 574, 72 S.Ct. at 494). "By referring to administrative agencies matters that involve 'technical or policy considerations which are beyond the court's ordinary competence and within the agency's particular field of expertise,' preliminary referral secures '[u]niformity and consistency in the regulation of business.' " *Id.* (*quoting MCI Communications*, 496 F.2d at 220).

"[Federal] courts apply primary jurisdiction to cases involving technical and intricate questions of fact and policy that Congress has assigned to a specific agency." *Nat'l Communications Ass'n*, 46 F.3d at 223. Unfortunately, there is not a fixed formula for determining whether an agency has primary jurisdiction. *See Id.* However, there are four factors that have generally been the focus of analysis. *MCI Telecomms. Corp. v. John Mezzalingua Assocs.*, 921 F.Supp. 936, 941 (N.D.N.Y. 1996) (*citing Nat'l Communications Ass'n*, 46 F.3d at 223). The four factors are: (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise, (2) whether the question at issue is particularly within the agency's discretion, (3) whether there exists a substantial danger of inconsistent rulings, and (4) whether a prior application to the agency has been made. *Id.* The court must also balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings. *Nat'l Communications Ass'n*, 46 F.3d at 223.

Primary jurisdiction does not apply to legal questions "within the conventional competence of the courts." *Id.* (quotations and internal citations omitted). It also does not apply to cases involving the enforcement of a tariff, as opposed to a challenge to the reasonableness of a tariff. *Id.* The reasonableness of a tariff should be reviewed by an agency because it is an "abstract quality represented by an area rather than a pinpoint." *Id.*

In this case, the defendant contends that this action presents a "classic case" for application of the primary jurisdiction doctrine, because plaintiff's claims involve wholesale rates for electricity that fall within the exclusive jurisdiction granted by Congress to the Federal Energy Regulatory Commission ("FERC"). Additionally, it states that a proceeding is currently pend-

ing with FERC that involves the very rates at issue before this court. According to NYISO, FERC's decision will set the rate for Reserves, resolve the instant claims, and bind both the litigants and this court. In response, NYSEG contends that the doctrine does not apply because its claims fall within the conventional expertise of the court. In an effort to bolster their respective positions, the litigants discuss the four part test that is generally associated with the primary jurisdiction doctrine. The court will address these factors *seriatim*.

### A. *Conventional Experience*

The primary question currently at issue between the litigants is whether plaintiff's claims involve technical or policy considerations that lie within the expertise of the FERC. Predictably, the parties hotly contest the answer to this question. Defendant argues that plaintiff's claims implicate the rates charged for reserve electricity and that these rates are governed by complex tariffs. It also insists that the FERC has primary responsibility for interpreting rate-governing tariffs. Predicting that resolution of this action will require interpretation of these tariffs, NYISO maintains that the instant claims fall outside of the conventional experience of this court and should be referred to the FERC. In reply, plaintiff asserts that its claims are based solely upon common law tort and contract law and, therefore, their resolution does not require FERC's specialized knowledge.

■ After considering the parties' respective positions, the court finds that plaintiff's claims fall outside the conventional experience of this court. On its surface, this action was pled as simple breach of contract and common law tort

claims. Yet, notwithstanding NYSEG's ardent assertions to the contrary, the instant suit cannot be characterized in such simple terms. Instead, the contracts at issue are tariffs and, as such, are creatures of the complex arena of federal energy regulation. Although the court is capable of interpreting complex contracts, interpretation of the NYISO tariffs would cause the court to delve into a highly technical area that is fraught with dangers and pitfalls for the uninitiated. The court simply lacks the expertise to accurately foresee the technical or policy considerations associated with the interpretation of filed tariffs; such a job is better left to the FERC.

Before leaving the arena of "conventional experience," the court will discuss an alternate position taken by defendant during oral argument. Specifically, NYISO suggested that plaintiff claims implicate the FERC's authority to ensure the reasonableness of the wholesale rates for Reserves. *See* Mot. Tr. at 11. According to defendant, NYSEG specifically accuses NYISO of failing to conform with the terms of its tariffs and, thereby, artificially inflated the rate for Reserves. *See id.* It also contends that the damages sought by NYSEG consist of the difference between the artificial rates and what the rates should have been if NYISO had complied with its tariffs. *See id.* Therefore, the defendant maintains that any award of damages in this case will require the court to calculate the wholesale market rate for Reserves. It also states that the wholesale rate is identical to the reasonable rate, and, therefore, the court will actually set the reasonable rate when it calculates the wholesale rate. Since calculation of the reasonable rate for Reserves falls within the FERC's expertise, authority and jurisdiction, NYISO suggests that this matter must be referred to FERC to calculate

NYISO damages.[4] *See id.* at 14.

In reply, plaintiff insists that the court does not need to calculate the rate for Reserves, because its claims are based solely upon common law tort and contract law. It explains that wholesale rates are not static numbers, but are derived from formulas and, eventually, become the market clearing price for electricity. *See id.* at 22. According to NYSEG, these rate formulas constitute a set of principles that are themselves derived from NYISO's tariffs. *See id.* It is plaintiff's contention that defendant failed to apply this formula in a manner consistent with the NYISO tariffs and, therefore, it believes that the rates charged by NYISO were not the approved *wholesale* rates for Reserves. *See id.* at 23. Plaintiff also maintains that the complaint simply asks the court to recalculate the market clearing price using the procedures described in the NYISO's tariffs. *See id.* at 23 & 35. Moreover, NYSEG reiterates that it is well within the court's expertise to interpret the NYISO tariffs and, thereby, calculate the actual market clearing price for Reserves. *See id.* at 32.

After reflecting upon these positions, the court finds that in order to determine the damage component of plaintiff's claims it would be necessary to establish the wholesale market clearing rate for Reserves. Moreover, it is clear that clearing rates are essentially equivalent to the reasonable rate for Reserves and must be calculated through interpretation of NYISO's tariffs.[5] As stated above, interpretation of the NYISO tariffs lies beyond the court's conventional expertise. Therefore, the court finds that calculation of the market clearing rate for the Reserves in question is also a matter that should be referred to the FERC.[6]

## B. *Agency Discretion*

The question relevant to this factor is whether plaintiff's claims fall within the discretion of the FERC. Defendant, obviously, argues that the FERC retains authority over these claims because they fall under the purview of the agency's authority to set the rates for Reserves. NYSEG, however, maintains that the FERC is unable to award damages for tort or breach of contract, because its jurisdiction is limited to challenges to the reasonableness of the rate charged for electric power. Since NYSEG seeks damages for NYISO's deviation from the rate calculation procedures described its tariffs and does not challenge the reasonableness of the rate, plaintiff insists that its claims are not within FERC's discretion.

In reply, defendant argues that the FERC has the discretion to order a remedy for any damages sustained by NYSEG.

---

4. Specifically, NYISO asks the court to either dismiss or stay this action and "wait for the process now pending before FERC to play itself out." *See* Mot. Tr. at 14. Defendant refers to its motion for reconsideration in which it asks FERC to reset the rates for Reserve energy.

5. Frankly, the undersigned arrives at this conclusion, *in part,* because plaintiff has not explained how interpreting NYISO's tariffs to recalculate the market clearing price does not also force the court to set the reasonable rate. Absent any clear explanation to the contrary, it appears that the market price for Reserves becomes the reasonable rate if proper procedures described in the NYISO tariffs are used to determine the market price. Therefore, if this court interprets NYISO tariffs, as plaintiff asks, to recalculate the market price, it must then also be setting the reasonable rate.

6. At this juncture, the court does not address questions concerning FERC's jurisdiction to set the reasonable rate under the filed-rate doctrine; such issues can be discussed after FERC decides NYISO's motion for a rehearing—if necessary.

To support this position, defendant refers to the FERC's pronouncement that NYISO will be liable for a refund if it overcharged NYSEG for reserves. *See New York Independent System Operator v. New York State Electric & Gas Corp.*, 94 FERC ¶ 61,019, 2001 WL 26169 (Jan. 10, 2001). NYISO also claims that it now seeks approval from the FERC to recover the overcharges incurred in the Reserves market on behalf of NYSEG and other Transmission & Distribution ("T & D") companies. According to NYISO, this proceeding before the FERC will likely render the instant claims moot.[7]

The court finds that plaintiff's claims fall within the FERC's discretion because they implicate the reasonable rate. As indicated above, damages in this case can only be calculated by first determining the reasonable rate for Reserves. Therefore, although plaintiff does not *specifically* challenge the reasonableness of the rate, it is within FERC's authority to conclusively set plaintiff's damages in this case. Moreover, the court notes that FERC could potentially set the reasonable rate for Reserves when it decides NYISO's motion for rehearing. Due to FERC's exclusive authority to establish the reasonable rate, such a ruling will bind this court concerning the calculation of plaintiff's damages, and render the instant suit moot. *See* FN 7. For these reasons, plaintiff's claims also fall within the FERC's discretion.

## C. *Inconsistent Rulings*

The litigants also dispute whether a decision by this court will create a risk of inconsistent rulings. Defendant claims this case could conflict with NYISO's pending request before the FERC to recover overcharges in the Reserve market. It also argues that no other T & D company is a party to the instant litigation and, therefore, any substantive decision by this court in NYSEG's favor could result in inconsistent interpretations of the filed tariffs that control the Reserves market.

In response, plaintiff contends that the only issue pending before the FERC is whether a retroactive rate adjustment is just and reasonable. Since the only issue before this court relates to NYISO's liability and not the reasonableness of rates, plaintiff insists that there is no risk of inconsistent rulings.[8] Finally, it reiterates that the FERC is unable to award damages in tort or contract.

The court finds that any decision in the instant litigation would present a significant danger of inconsistent rulings. Specifically, it is clear that NYISO has requested permission from the FERC to recover overcharges in the Reserve market on NYSEG's behalf. Although NYSEG contends that the issue before FERC is different from those present in this case, the fact remains that the parties in both proceedings seek to recover the amount overcharged for the Reserve market. Moreover, as previously dis-

---

**7.** Specifically, NYISO contends that FERC's decision will resolve all issues presented by plaintiff in the following manner. If, on rehearing, the FERC determines that the actions of generating companies were unlawful and resulted in unjust and unreasonable market rates for Reserves, NYSEG and other T & D companies will receive refunds from the generators. However, if the FERC does not alter the rates previously charged for Reserves, then those rates become the just and reasonable approved rates. The defendant also claims that any FERC determination concerning Reserve rates will bind this court, NYISO, NYSEG and ultimately resolve the instant litigation.

**8.** The court has already distinguished plaintiff's contention that the issues before FERC, i.e., reasonableness, are distinct from those presented in the instant action. *See* Preceding Discussion on Agency Discretion.

cussed, FERC's ruling may set the reasonable rate for Reserves. In such a circumstance, a decision by this court setting NYSEG's damages could conflict with FERC's proclamation concerning the reasonable rate. For this reason, a potential for inconsistent rulings exists in this case.

### D.  *Prior Application to the FERC*

In regard to this factor, the parties dispute whether defendant's request to recover overcharges constitutes an application to the FERC. Specifically, plaintiff insists that the FERC has already rendered a decision concerning the Reserves market and that NYISO's pending request is merely for a rehearing. For this reason, NYSEG contends that a referral to the FERC pursuant to the primary jurisdiction is unwarranted. The court disagrees. NYISO's request for permission to recover overcharges in the Reserves market constitutes a prior application to the FERC. Prior to this action, defendant sought a rehearing on the issue of the overcharges at issue in the instant action. This request is still pending. Moreover, the court reiterates that NYISO's request to the FERC has the potential to resolve the current conflict. For these reasons, it is clear to this court that NYISO's pending request for a rehearing constitutes a prior application to the FERC.

### E.  *Application of the Primary Jurisdiction Doctrine*

In light of the above discussion, the court finds that application of the primary jurisdiction doctrine is appropriate in this case. However, questions remain concerning the appropriate course of action. Specifically, defendant seeks to refer the instant claims to the FERC and to dismiss the instant action. In the alternative, it asks to stay of this action and allow the

FERC to rule on its request to recover overcharges. Normally, when applying the doctrine of primary jurisdiction the court could either dismiss the action or impose a stay. In this case, the court will impose a stay rather than force the plaintiff to re-file its action at some future date. *See generally Golden Hill*, 39 F.3d at 60 (the judicial hand should be stayed pending reference of a plaintiff's claims to an agency).

Furthermore, courts also normally refer a specific question to FERC for resolution when applying primary jurisdiction. In this case, the question to be referred concerns calculation of the reasonable rate for Reserves during the specific time period in question herein. Since there is already a pending request before the FERC that could effectively resolve this question, the above referral is unnecessary. Therefore, the prudent course of action is to allow the FERC to resolve NYISO's pending request. Accordingly, the court hereby stays this action for a period of 12 months. After expiration of this time, the court will revisit this decision if the FERC has not resolved the instant matter.

Finally, the court arrives at this decision with trepidation as it is fully aware of the potential hardship this delay may cause the parties. However, the Second Circuit has indicated that application of the primary jurisdiction doctrine is appropriate "where a statute confers jurisdiction over a general subject matter to an agency and that matter is a *significant component* of a dispute properly before [a] court." *Id.* at 59 (emphasis added). It has also stated that "[a] court should delay forging ahead when there is a likelihood that agency action may render a complex fact pattern simple or a lengthy judicial proceeding short." *Id.* at 60. Since the instant case clearly fits into the type of situation described by the Circuit above, a stay pursu-

ant to the doctrine of primary jurisdiction is appropriate despite the inconvenience that a one-year delay may inflict upon the litigants.

### F. *Discovery*

Plaintiff has requested to continue discovery during the stay period. The court sees no reason for the parties to incur the considerable expense associated with discovery at this time; unless it is required by the FERC. Therefore, plaintiff's request is denied.

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED,** that the instant action is hereby **STAYED** for a period of **TWELVE (12) MONTHS** beginning from the filing date of this Memorandum–Decision and Order, or until the FERC renders a decision on defendant's motion for a rehearing. It is further

**ORDERED,** that defendant's motion to dismiss is **DENIED** without prejudice and with leave to renew after expiration of the above referenced stay, or after the FERC renders a decision. It is further

**ORDERED,** that plaintiff's motion to conduct discovery during the pendency of the stay is **DENIED.** It is further

**ORDERED,** that the Clerk of the Court serve a copy of this Memorandum–Decision and Order upon the parties by regular mail.