William J. BROWN, III, On behalf of himself and all others similarly situated, and on behalf of the general public, Plaintiff–Appellant,

v.

MCI WORLDCOM NETWORK SERVICES, INC., Defendant–Appellee.

No. 00–56171.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 2001.

Filed Jan. 17, 2002.

Michael Padilla, O'Mara & Padilla, San Diego, California, for plaintiff-appellant William J. Brown.

Jeffrey A. Rosenfeld, Daniel J. Schultz, Antony E. Buchignani, Piper Marbury Rudnick & Wolfe LLP, Los Angeles, California; Thomas F. O'Neil III, David T. Smorodin, MCI WorldCom, Inc., Washing-

ton, DC, for defendant-appellee MCI WorldCom Network Services, Inc.

Before: T.G. NELSON and W. FLETCHER, Circuit Judges, and AIKEN, District Judge.*

## OPINION

WILLIAM A. FLETCHER, Circuit Judge:

William Brown appeals the district court's dismissal of his class-action complaint alleging overcharging by telephone service provider MCI WorldCom, Inc. (MCI). The district court held that Brown's suit was barred by the filed-rate doctrine. The district court further held that Brown's claim must be resolved in the first instance by the Federal Communications Commission (FCC) pursuant to the doctrine of primary jurisdiction. We hold that because Brown seeks only to enforce an existing, FCC-approved tariff, he has properly stated a claim under federal law. Accordingly, we reverse and remand.

### I

In his amended complaint, Brown alleged that he entered into a two-year contract with MCI to provide telephone service to his two office locations. Each location was to have three phone lines. MCI assigned a separate "account number" to each of the six lines. MCI also assigned a "customer number" to Brown, and then assigned an additional account number to Brown's customer number at each of the two locations. Brown alleged MCI improperly charged him $10 per month for the account numbers assigned to his two customer numbers, even though there were no associated phone lines. The result, according to Brown, was that he was charged as if he had eight lines, even though he had only six.

Brown contacted MCI to complain of the overcharge to one of his two office locations. MCI told Brown the overcharge was due to a computer error, issued him a credit, and modified his account so that he would no longer be charged the $10 minimum fee on his customer number. However, Brown did not notice or complain of the overcharge to his second office location. MCI did not modify that account. It is not clear from the complaint if or when the charges on the second location's account were ever modified.

The district court dismissed Brown's amended complaint with prejudice for failure to state a claim upon which relief could be granted. *See* Fed.R.Civ.P. 12(b)(6). The district court did not address whether MCI's tariff permits the billing practice Brown challenges. Rather, it concluded that because Brown's claim was related to MCI's tariff, the claim was barred by the filed-rate doctrine. The court additionally held that Brown's claim was barred by the doctrine of primary jurisdiction, and stated that Brown must seek relief before the FCC. The district court denied Brown's request for a stay, refusing to "speculate" as to whether the statute of limitations might run while Brown pursued his claim with the FCC. We review *de novo* the district court's dismissal. *See Evanns v. AT & T Corp.*, 229 F.3d 837, 839 (9th Cir.2000).

### II

Rates charged by "common carriers," including telephone service provid-

* The Honorable Ann L. Aiken, United States District Judge for the District of Oregon, sitting by designation.

ers such as MCI, are regulated by the FCC pursuant to the Federal Communications Act of 1934 (FCA), 47 U.S.C. § 151 et seq. Every carrier is required to file a tariff with the FCC listing its schedule of charges. *Id.* § 203(a). Once a tariff is approved, it "bind[s] both carriers and shippers with the force of law." *Lowden v. Simonds–Shields Lonsdale Grain Co.,* 306 U.S. 516, 520, 59 S.Ct. 612, 83 L.Ed. 953 (1939). *See also AT & T Corp. v. City of New York,* 83 F.3d 549, 552 (2d Cir. 1996) (stating that filed tariffs attain "the force of law and are not simply contractual").

Customers alleging that a carrier has violated a filed tariff (or otherwise violated the FCA) may choose to bring their complaints to the FCC *or* to "any district court of the United States of competent jurisdiction." 47 U.S.C. § 207. However, the filed-rate doctrine (also called the filed-tariff doctrine) "bars all claims—state and federal—that attempt to challenge the terms of a tariff that a federal agency has reviewed and filed." *Evanns,* 229 F.3d at 840 (internal quotation marks and citation omitted). Under the filed rate doctrine, no one may bring a judicial challenge to the validity of a filed tariff. As a corollary, no one may bring a judicial proceeding to enforce any rate other than the rate established by the filed tariff. If a carrier contracts to provide a service at a rate different from that of the filed tariff, that contract is unenforceable. *See AT & T Corp. v. Central Office Tel., Inc.,* 524 U.S. 214, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998). "[S]ince the federal regulation defines the entire contractual relation between the parties, there is no contractual undertaking left over that state law might enforce. Federal law does not merely create a right; it occupies the whole field, displacing state law." *Cahnmann v. Sprint Corp.,* 133 F.3d 484, 489 (7th Cir. 1998).

The purpose of the FCA's tariff-filing requirement is to "prevent[] unreasonable and discriminatory charges." *Central Office,* 524 U.S. at 222, 118 S.Ct. 1956. The filing requirement " 'render[s] rates definite and certain, and ... prevent[s] discrimination and other abuses.' " *MCI Telecomm. Corp. v. AT & T Corp.,* 512 U.S. 218, 230, 114 S.Ct. 2223 (1994), *quoting Arizona Grocery Co. v. Atchison, Topeka, and Santa Fe Ry. Co.,* 284 U.S. 370, 384, 52 S.Ct. 183, 76 L.Ed. 348 (1932). Neither the carrier nor its customers may deviate from the tariff. A carrier is "forbidden from charging rates other than as set out in its filed tariff, [and] customers are also charged with notice of the terms and rates set out in that filed tariff." *Evanns,* 229 F.3d at 840. Carriers may not negotiate any form of "rebates or discounts" with customers because this is "the very evil the filing requirement seeks to prevent." *Central Office,* 524 U.S. at 223, 118 S.Ct. 1956. In sum, "[t]he filed-rate doctrine's purpose is to ensure that the filed rates are the *exclusive source* of the terms and conditions by which the common carrier provides to its customers the services covered by the tariff." *Lovejoy v. AT&T Corp.,* 92 Cal.App.4th 85, 100, 111 Cal.Rptr.2d 711 (Cal.Ct.App.2001), *quoting Central Office,* 524 U.S. at 230–31, 118 S.Ct. 1956 (Rehnquist, C.J., concurring) (emphasis added).

In addition to barring suits challenging filed rates and suits seeking to enforce rates that differ from the filed rates, the filed-rate doctrine also bars suits challenging services, billing, or other practices when such challenges, if successful, would have the effect of changing the filed tariff. *Central Office,* 524 U.S. at 223, 118 S.Ct. 1956. In *Central Office,* plaintiff Central Office Telephone (COT), a long distance reseller, contracted with AT&T to buy long-distance service in bulk. COT

relied on the representations of an AT&T salesperson in signing the contract, although the contract itself provided that it would be governed by the provisions of the tariff. *Id.* at 218, 118 S.Ct. 1956. When AT&T's service and billing did not match its representations to COT, COT brought suit claiming breach of contract and tortious interference with contract. COT argued that its suit was not barred by the filed-rate doctrine because it did not challenge rates or rate-setting, but rather sought to enforce contracts for services and billing.

■ The Supreme Court disagreed, explaining, "[r]ates ... do not exist in isolation. They have meaning only when one knows the services to which they are attached. Any claim for excessive rates can be couched as a claim for inadequate services and vice versa." *Id.* at 223, 118 S.Ct. 1956. Even though the billing option chosen by COT was not covered by the tariff, the court held that the claim seeking to enforce the option was barred.

> [T]he additional services and guarantees that [COT] claims it was entitled to by virtue of [AT&T's] representations and petitioner's sales brochures—viz., faster provisioning, the allocation of charges through multilocation billing, and various matters relating to deposits, calling cards, and service support . . .—all pertain to subjects that are specifically addressed by the filed tariff.

*Id.* at 224–25, 118 S.Ct. 1956. As the Court explained, COT's complaint about terms and service was, at bottom, a complaint about rates. The filed-rate doctrine thus prevents suits seeking to enforce agreements outside the tariff (i.e., indirectly challenging the validity of a tariff) as well as suits directly challenging the validity of a tariff. But it "does not serve as a shield" staving off claims against a carrier based on the tariff itself. *Lovejoy,* 92 Cal.App. 4th at 100 *quoting Central Office,*

524 U.S. at 230–31, 118 S.Ct. 1956 (Rehnquist, C.J., concurring).

■ Brown does not challenge the validity of the tariff, either directly or indirectly. The portion of MCI's tariff at issue here authorizes MCI to charge a $10 minimum usage fee, providing in part:

> Each customer's usage must equal or exceed $10.00 in each monthly billing period. If in any monthly period a customer's [sic] fails to equal or exceed $10.00 the customer will be billed and required to pay the difference between the customer's actual usage and the $10.00 minimum usage threshold. Monthly recurring fees and charges will not count towards satisfying the minimum usage threshold.

Brown's complaint does not allege that the $10 minimum monthly usage fee established by the tariff is unreasonable or invalid. Rather, Brown complains that MCI violated the tariff by creating extraneous "accounts" at each of Brown's office locations, and then wrongfully charging each of those accounts—which did not have associated phone lines or phone service—an unauthorized $10 monthly fee.

■ In finding Brown's claim barred by the filed-rate doctrine, the district court misunderstood the scope of the *Central Office* holding. The district court concluded, "The fees Brown challenges are charged because of the contractual relationship between him and MCI, and that contractual relationship arises out of, is governed by, and is wholly occupied by the filed tariff." While it is true that Brown's complaint must be resolved with reference to the tariff, that does not mean the district court may not hear the suit. The filed-rate doctrine precludes courts from deciding whether a tariff is reasonable, reserving the evaluation of tariffs to the FCC, but it does not preclude courts from interpreting the provisions of a tariff and

enforcing that tariff. If the filed-rate doctrine were to bar a court from interpreting and enforcing the provisions of a tariff, that doctrine would render meaningless the provisions of the FCA allowing plaintiffs redress in federal court. *See* 47 U.S.C. §§ 206–07.

Brown seeks merely to enforce the tariff. He does not claim that he was promised something outside the tariff and then denied it, as in *Central Office. See* 524 U.S. at 222–23, 118 S.Ct. 1956. Nor does he claim that MCI had some obligation to him beyond the obligations set out in the tariff. *See Evanns*, 229 F.3d at 841 (holding plaintiff's claim that carrier was required to disclose pass-through of Universal Service Fee (USF) to customers was barred by filed-rate doctrine where the USF assessment was included in the tariff). Nor does he argue that the $10 fee, if authorized by the tariff, is unreasonable. *See Cahnmann*, 133 F.3d at 489–90 (holding claim that carrier's modification to tariff after customers had signed up for service was unreasonable was barred by the filed-rate doctrine). Rather, Brown claims that there is no authorization in the tariff to charge him the $10 fee, and that the fee therefore violated the tariff. *See Lovejoy*, 92 Cal.App.4th at 101, 111 Cal.Rptr.2d 711(holding claim that carrier switched customer's long-distance service without his knowledge or consent was not barred by the filed rate doctrine). We therefore conclude that Brown's claim is not precluded by the filed-rate doctrine.

### III

■■■ The district court also held that under primary jurisdiction principles Brown must present his claim to the FCC. In so holding, the district court misapprehended the primary jurisdiction doctrine. The doctrine does not require that all claims within an agency's purview be decided by the agency. Nor is it intended to "secure expert advice" for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit. *See United States v. General Dynamics Corp.*, 828 F.2d 1356, 1365 (9th Cir.1987). Primary jurisdiction is properly invoked when a claim is cognizable in federal court but requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency. *See Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 442, 27 S.Ct. 350, 51 L.Ed. 553 (1907). "The doctrine applies when protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *General Dynamics*, 828 F.2d at 1362(internal quotation marks and citation omitted).

■■■ Primary jurisdiction is not implicated simply because a case presents a question, over which the FCC could have jurisdiction, regarding the interpretation of a single tariff. Rather, primary jurisdiction is properly invoked when a case presents a far-reaching question that "requires expertise or uniformity in administration." *Id. See also, e.g., Allnet Communication Serv., Inc. v. National Exch. Carrier Ass'n, Inc.*, 965 F.2d 1118, 1121 (D.C.Cir. 1992) (holding primary jurisdiction appropriate where judicial resolution of the claim would improperly "preempt the [FCC] from implementing what amount to policy decisions about the Universal Service Fund programs and technical questions on the adequacy of filed tariffs"); *MCI Telecomm. Corp. v. Mezzalingua Assocs., Inc.*, 921 F.Supp. 936, 941 (N.D.N.Y. 1996) *citing National Communications Ass'n. v. AT & T Corp.*, 46 F.3d 220, 222 (2d Cir.1995) (primary jurisdiction is appropriate when the issue is not "within the conventional experience of judges" but rather "involves technical or policy consid-

erations within the agency's particular field of expertise"; when the issue is "particularly within the agency's discretion"; and "there exists a substantial danger of inconsistent rulings").

 The doctrine of primary jurisdiction should not be confused with the requirement of exhaustion of administrative remedies. The FCA does not require that a plaintiff exhaust his administrative remedies before proceeding to federal court to enforce a tariff. In providing a federal court forum under the FCA, Congress made clear that it did not intend to require that suits brought to enforce tariffs first be decided by the FCC. Under 47 U.S.C. § 207, plaintiffs may elect to proceed either before the FCC or in district court.

It is not clear from the record so far compiled whether Brown's complaint presents the sort of complex and far-reaching issues that are properly within the FCC's primary jurisdiction. If resolution of Brown's claim involves a straightforward interpretation of MCI's filed tariff, the district court will be competent to resolve the claim without resort to the FCC. However, at this stage of the proceedings, we cannot say with certainty whether the district court should eventually refer some or all of Brown's complaint to the FCC for resolution.

Primary jurisdiction "requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Reiter v. Cooper,* 507 U.S. 258, 268, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). Such a referral "does not deprive the court of jurisdiction; it has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice." *Id.* at 268–69, 113 S.Ct. 1213. Here, if the district court does decide that Brown's claim involves issues requiring resolution by the FCC, the court should stay further proceedings under *Cooper.* We note that because the two-year statute of limitations for Brown's federal action has expired, *see* 47 U.S.C. § 415, Brown may be "unfairly disadvantaged" in the event the district court does not retain jurisdiction pending resolution by the FCC.

We REVERSE and REMAND for further proceedings consistent with this opinion.