638 P.2d 210

**Robert L. SEEKINGS and Ida F. Seekings, husband and wife, Appellees/Cross Appellants,**

v.

**JIMMY GMC OF TUCSON, INC., dba Jimmy Recreational Center; and Beaver Coaches, Inc., Appellants/Cross Appellees.**

No. 15479–PR.

Supreme Court of Arizona, In Banc.

Nov. 25, 1981.

Rehearing Denied Jan. 6, 1982.

Alpert & Fein, P. C., by James A. Fein, K. C. Stanford, Tucson, for appellees/cross appellants.

Johnson, Dowdall & Payne, by Tanis A. Duncan and Richard J. Dowdall, Tucson, for appellant/cross appellee Jimmy GMC of Tucson, Inc.

Bilby, Shoenhair, Warnock & Dolph, P. C., by Dwight M. Whitley, Jr., Tucson, for appellant/cross appellee Beaver Coaches, Inc.

GORDON, Justice:

Plaintiffs/appellees/cross appellants [hereinafter appellees] Robert and Ida Seekings sued defendants/appellants/cross appellees [hereinafter appellants]. They al-

leged breach of contract, breach of express warranty, breach of implied warranty, fraud, and consumer fraud.

On April 20, 1977, appellees went to appellant Jimmy GMC of Tucson, Inc. [hereinafter Jimmy GMC] to buy a motor home. They contracted to purchase a Four Winds motor home and traded in their Avco motor home for a $5,800.00 credit. When appellees later returned to pick up the Four Winds vehicle, it would not start. They refused to accept the Four Winds vehicle and demanded return of their trade-in.

Jimmy GMC told appellees that their trade-in had already been sold but that they could apply the credit to another motor home. On May 1, 1977, appellees agreed to purchase a motor home manufactured by appellant Beaver Coaches, Inc. [hereinafter Beaver]. Jimmy GMC had bought the vehicle from Beaver. Beaver expressly warranted the motor home against defects in workmanship and material. Jimmy GMC was Beaver's authorized agent for warranty work, but it disclaimed all express or implied warranties by itself. Some of the optional equipment added to the vehicle at appellees' request came with express warranties from the manufacturers, and appellees purchased a five-year power train warranty from Jimmy GMC.

The Beaver motor home had numerous problems. When appellees took their first trip in the vehicle, they discovered that the gas gauge and power generator did not work, the furnace would not start, the carburetor did not function properly, and the gas mileage was poor. Appellees returned the vehicle on May 23 to Jimmy GMC where it was worked on for five days. Apparently, not all of these problems were cured, and subsequently appellees complained that among other things, the passenger door was drafty, the motor stalled, the air conditioner malfunctioned, and sewage backed up into the bathtub. Appellees returned the motor home to Jimmy GMC

for warranty work on June 1, June 16, and June 27.

Some of the defects were repaired, but others were not. Finally, on September 6, 1977, appellees' attorney sent a letter of revocation of acceptance [1] to Jimmy GMC; a similar letter was sent to Beaver on October 5, 1977. The letters detailed the remaining uncured problems, which included an engine that was difficult to start and would stall out at high altitudes, an improperly functioning power plant, and an improperly fitted passenger door. Appellees filed their complaint on December 12, 1977.

On April 6, 1978, appellants' representatives, with appellees' consent, went to appellees' home to inspect the motor home, apparently in an attempt to settle the dispute. After taking twenty-five to thirty minutes to get the vehicle started, appellants' representatives returned it to Jimmy GMC for more work. On May 15, 1978, appellant presented appellees with a list of defects which appellants attempted to cure. Appellees initialed the items they found cured but noted that a door shade was not yet satisfactory, the passenger door was still drafty, and the engine and auxiliary generator were still not functioning properly. When appellees drove the vehicle from Tucson to Phoenix in June, 1978, the dash air conditioner also failed.

The case was tried to the court alone. Before the case was submitted for decision, the trial judge ordered appellees to elect as a remedy either revocation of acceptance or damages for breach of warranty or contract. Appellees chose to press for revocation of acceptance. The trial judge then granted revocation against both appellants and awarded appellees $14,885.10 in incidental and consequential damages.

Appellants appealed to Division Two of the Court of Appeals and appellees cross-appealed. In reversing and remanding in 131 Ariz.App. 1, 638 P.2d 223 (1981), the

---

1. Appellees' letters and their subsequent civil complaint requested "rescission" rather than "revocation of acceptance." The record of the proceedings is clear, however, that the parties here treated the complaint as a cause of action for revocation of acceptance under A.R.S. § 44–2371 rather than an action for common law rescission, which may still exist under A.R.S. § 44–2203. We will also treat the action as one for revocation of acceptance.

Court of Appeals held that: (1) revocation of acceptance and incidental and consequential damages cannot be awarded against a manufacturer who has not sold directly to the purchaser; and (2) under the facts of this case, revocation could not be awarded against the seller. Appellees petitioned this Court for review to consider four issues:

(1) Is a purchaser entitled to revocation of acceptance of a product under A.R.S. § 44–2371 against a manufacturer not in privity with the purchaser?;

(2) If the purchaser is not entitled to such revocation; is it bound by its election to sue for revocation?;

(3) Under the facts of this case, was revocation proper as against the seller?; and

(4) If appellees are entitled to revocation against either appellant, should the trial court have awarded loss of use damages? Taking jurisdiction pursuant to A.R.S. § 12–120.24 and Rule 23, Rules of Civil Appellate Procedure, we approve in part and vacate in part the opinion of the Court of Appeals. The case is remanded to the trial court for further proceedings consistent with this opinion.

## REVOCATION AGAINST THE MANUFACTURER

Relying on *Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349 (Minn.1977), appellees argue that the Court of Appeals erred in reversing the trial court's grant of revocation of acceptance against the manufacturer Beaver. The *Durfee* court, liberally administering the remedies of the Uniform Commercial Code [U.C.C.], see A.R.S. § 44–2206, held that a manufacturer who indirectly profits from the sale of a product by its distributor can be sued for revocation of acceptance of that product. We believe *Durfee* is contra the plain meaning of the U.C.C.

The rights of aggrieved buyers under the U.C.C. are enumerated in A.R.S. §§ 44–2390 to 44–2396. All of the rights concern what the buyer is entitled to as against the "seller." A.R.S. § 44–2303(A)(4) defines "seller" as "a person who sells or contracts to sell goods."

Beaver neither sold nor contracted to sell the motor home to appellees. Further, there was no evidence to support a finding that Jimmy GMC was an agent of Beaver for purposes of selling motor homes. Therefore, as Beaver was not in privity with appellees, appellees were not entitled to revocation against Beaver. The Court of Appeals was correct in so holding. *Accord Voytovich v. Bangor Punta Operations, Inc.*, 494 F.2d 1208 (6th Cir. 1974); *Conte v. Dwan Lincoln-Mercury, Inc.*, 172 Conn. 112, 374 A.2d 144 (1976).

By holding that a manufacturer who does not sell to the purchaser cannot be liable for revocation and attendant damages, we follow the logic as well as the letter of the U.C.C. The remedies associated with revocation of acceptance are intended to return the buyer and seller to their presale positions. In general, the buyer is entitled to recovery of the purchase price plus all damages caused by the seller's failure to deliver conforming goods; the seller can recover the goods sold. But a manufacturer does not receive the buyer's purchase price and no longer has an ownership interest in the goods sold. In fact, in the instant case, Jimmy GMC made several modifications to the vehicle, at appellees' request, after it left Beaver's factory. Thus, the manufacturer logically cannot share the seller's burden or benefit in returning the contracting parties to their presale positions.

## ELECTION OF REMEDIES

Appellees argue that if revocation of acceptance is unavailable against Beaver, then their election to sue for revocation was no election at all as to Beaver. They argue that they should now be permitted to sue Beaver for damages for breach of warranty. Beaver has not responded to this argument. We do not consider appellees' argument because we find even if the trial court erred in forcing appellees to make an election to sue either for revocation or for

damages for breach,[2] appellees may no longer press the damages claim.

■ Our opinion in *Flory v. Silvercrest Industries, Inc.*, 129 Ariz. 574, 633 P.2d 383 (1981), precludes a U.C.C. warranty claim against Beaver for the same reason that a revocation of acceptance claim is precluded—Beaver is not in privity with appellees. But as we held in *Flory*, lack of privity between a manufacturer and retail purchaser does not preclude a claim outside the U.C.C. for breach of express warranty. A.R.S. § 44–2203 would allow such a traditional action, and logic precludes rendering meaningless a manufacturer's express warranty to a retail purchaser.

■ We note, however, that appellees are not entitled to inconsistent or double recoveries. Because appellees have returned the vehicle and recovered the purchase money paid, they may not also receive damages for breach of warranty which are predicated on the buyer's retention of the nonconforming goods.

■ Arguably, if due to any breach Beaver could be held jointly liable at common law for the incidental and consequential damages suffered by appellees, Beaver could still be sued for breach of an express non-U.C.C. warranty to recover these special damages. Beaver cannot be held liable for such damages, however. Beaver's express warranty contains this conspicuous clause: "Beaver Coaches, Inc. shall not be liable for consequential damages, including but not limited to loss of use of the unit, resulting from a breach of any written or implied warranty on any Beaver Coaches unit." Such a disclaimer of damages is valid under non-U.C.C. law as well as under the U.C.C.

■ At common law, "consequential" or "special" damages are those damages caused by a breach of contract or warranty that can reasonably be supposed to be within the contemplation of the parties at the time of the contracting.[3] *All American School Supply Co. v. Slavens*, 125 Ariz. 231, 609 P.2d 46 (1980); D. Dobbs, *Remedies* § 12.3 (1973). These are the type of incidental and consequential damages for which Jimmy GMC was held liable under A.R.S. § 44–2394. Because Beaver validly disclaimed liability for such damages, it cannot now be held jointly liable for them.[4] Therefore, even though appellees should not have been forced to abandon their breach of express warranty claim against Beaver, they are no longer entitled to recover anything as against Beaver.

## REVOCATION AGAINST SELLER

Under A.R.S. § 44–2371(A), goods must have a nonconformity from what they are represented to be before revocation of acceptance is available. When it sold the Beaver motor home to appellees, Jimmy GMC conspicuously disclaimed in writing all express or implied warranties by itself, including the implied warranty of merchantability. The written disclaimer appeared in the purchase order and in the purchase

2. We observe that a plaintiff suing outside the U.C.C. for common law rescission and damages for breach of contract or warranty can be forced to choose either rescission or damages as a remedy. *See Beauchamp v. Wilson*, 21 Ariz.App. 14, 515 P.2d 41 (1973). This is not the rule under the U.C.C., however. Official Comment 1 to U.C.C. § 2–608 (A.R.S. § 44–2371) states: "[T]he buyer is no longer required to elect between revocation of acceptance and recovery of damages for breach. Both are now available to him. * * * The remedy under this section * * * is referred to simply as 'revocation of acceptance' of goods tendered under a contract for sale and involves no suggestion of 'election' of any sort." We do not decide at this time which rule to apply when a plaintiff may have both U.C.C. and non-U.C.C. claims.

3. Thus, at common law, "consequential" damages has a broader meaning than under the U.C.C. because it includes the U.C.C. definitions of both "incidental" and "consequential" damages. See A.R.S. § 44–2394. Because appellees could only bring a warranty suit under the common law and not the U.C.C., we give the term "consequential" damages its common law meaning. We find no contrary intent of the parties.

4. We do not at this time comment on whether Beaver has any liability to Jimmy. We address only Beaver's liability to appellees.

money security agreement, both of which were signed by appellees. Generally, such a disclaimer is valid under A.R.S. § 44–2333. Jimmy GMC argued that because it disclaimed all warranties, it could not have sold nonconforming goods within the meaning of A.R.S. § 44–2371 and, therefore, could not be liable for revocation of acceptance.

The trial court, however, found the disclaimer unconscionable, and, relying on A.R.S. § 44–2319(A),[5] refused to give it any effect. The evidence tending to support unconscionability was that appellees did not have a chance to read the papers before signing them and Jimmy GMC forced the sale on appellees when it sold their trade-in and would only give them a credit towards a new motor home. The Court of Appeals reversed holding that: (1) the failure to read a contract before signing does not invalidate it in the absence of fraud, *see Apolito v. Johnson*, 3 Ariz.App. 232, 413 P.2d 291 (1966); and (2) although Jimmy GMC may have had a superior bargaining position, its actions were not unconscionable because it did not take advantage of its position.

We believe the trial court reached the correct result but for an incorrect reason. Therefore, we will affirm the trial court's result in granting revocation against Jimmy GMC, *see Certified Collectors, Inc. v. Lesnick*, 116 Ariz. 601, 570 P.2d 769 (1977), and vacate the portion of the Court of Appeals' opinion reversing that result.

■ We agree with the Court of Appeals that the disclaimer was not unconscionable. Official Comment 1 to U.C.C. § 2–302 (A.R.S. § 44–2319) states:

"The basic test [for unconscionability] is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the

contract. * * * The principle is one of the prevention of oppression and unfair surprise * * * and not of disturbance of allocation of risks because of superior bargaining power."

(Citations omitted.) *Accord Raybond Electronics, Inc. v. Glen-Mar Door Manufacturing Co.*, 22 Ariz.App. 409, 528 P.2d 160 (1974).

It is true that appellees were in an inferior bargaining position. Jimmy GMC had already sold appellees' trade-in and refused to give any compensation other than a $5,800 credit on another motor home. But we do not find that Jimmy GMC used their superior bargaining position to oppress or unfairly surprise appellees. There is no evidence that the disclaimer Jimmy GMC used in appellees' contract was different than the disclaimer Jimmy GMC used in all its sales contracts. As the Court of Appeals held, this allocation of risks should not be disturbed in the absence of overreaching by the party with superior bargaining power.

■ Nevertheless, we do not find that the disclaimer precludes the remedy of revocation of acceptance. The parties apparently believe that A.R.S. § 44–2371's reference to nonconformities refers only to failures to conform to an express or implied warranty. We do not read § 2371 so narrowly. Had the drafters of the U.C.C., who pored over the code for years, meant for the remedy to apply only when a warranty is breached, they would have stated so expressly. Rather, we find that revocation may be available whenever goods sold fail to conform to the seller's representation of the goods if the nonconformity "substantially impairs" the value of the goods to the buyer.

■ What Jimmy GMC represented to appellees, at least impliedly, was that they would receive a new motor home warranted

5. "If the Court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or

it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

by the various manufacturers,[6] for which warranties Jimmy GMC was an authorized repair agent. Jimmy GMC did not represent that this was a motor home sold "as is" but rather was a vehicle that, after a reasonable time for authorized warranty repair work to cure any defects, would be "mechanically new and factory furnished, operate perfectly, and be free of substantial defects." *Zabriskie Chevrolet, Inc. v. Smith*, 99 N.J.Super. 441, 452, 240 A.2d 195, 202 (1968) (quoted in *Murray v. Holiday Rambler, Inc.*, 83 Wis.2d 406, 420, 265 N.W.2d 513, 520 (1978); *Orange Motors of Coral Gables, Inc. v. Dade County Dairies, Inc.*, 258 So.2d 319, 320 (Fla.App.1972)). *Accord* J. White and R. Summers, *Uniform Commercial Code* § 8(3), at 264 (1972). This also was an allocation of the risks for which the parties freely bargained. Certainly, Jimmy GMC would not have received the price it did if appellees believed they were buying the vehicle "as is" in the sense that there was no guarantee that Jimmy GMC could effectively make all repairs covered by the warranties. Appellees were also not led to believe that they would have to take the vehicle for repairs to the manufacturers of the various components of the motor home. The express warranties guaranteed the vehicle could be made like new, and Jimmy GMC guaranteed it would perform all needed repairs. The disclaimer precludes a breach of warranty claim, but it

does not avoid revocation if the vehicle does not conform to the representation that it can be made like new within a reasonable time.[7]

The question then becomes whether appellees proved they were entitled to revocation under A.R.S. § 44–2371. Revocation is proper where the buyer proves that the goods purchased: (1) have a nonconformity that substantially impairs their value *to the buyer*; and (2) were accepted either with knowledge of the nonconformity that the seller promised to cure but has failed to reasonably cure or without knowledge of the nonconformity where acceptance was induced by the difficulty of discovery or by the seller's assurances. A.R.S. § 44–2371(A).[8] Revocation is valid only if the buyer notifies the seller of it within a reasonable time after the buyer discovers or should have discovered the ground for revocation and before the condition of the goods substantially changes other than because of their own defect. A.R.S. § 44–2371(B).[9]

■ Jimmy GMC argues that there was no substantial nonconformity because it stood ready, willing, and able at all times to cure any defects in the motor home. The record shows, however, that Jimmy attempted to cure defects in the vehicle four times between May 23, 1977 and June 27, 1977. Nevertheless, when appellees sent

6. Jimmy GMC delivered or acknowledged the existence of an express warranty covering the work Beaver did in manufacturing the interior as well as warranties given by the respective manufacturers covering the roof and dash air conditioners, the power plant, the range and oven, and the furnace. In addition, Jimmy GMC sold appellees a five-year service contract covering the power train (motor, transmission, etc.)

7. If Jimmy GMC had sold the vehicle "as is," presumably revocation of acceptance would not be an available remedy. Jimmy GMC might also have tried to preclude revocation as a remedy by other express contractual terms. *See* A.R.S. § 44–2398. In either of these cases the buyer would be on notice that revocation is not available as part of the bargain. In the instant case, the disclaimer of warranties gave no such notice; appellees did not freely bargain away revocation of acceptance as a remedy.

8. A.R.S. § 44–2371(A) provides:

"The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it:

"1. On the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

"2. Without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances."

9. A.R.S. § 44–2371(B) states:

"Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it."

their letter of revocation on September 6, the engine and power plant still functioned improperly and the passenger door did not fit correctly.[10]

> "After the purchase of an automobile, the same should be put in good running condition; that is the seller does not have an unlimited time for the performance of the obligation to replace and repair parts. The buyer of an automobile is not bound to permit the seller to tinker with the article indefinitely in the hope that it may ultimately be made to comply with the warranty. 46 Am.Jur. Sales § 732; 77 C.J.S. Sales § 340. At some point in time, if major problems continue to plague the automobile, it must become obvious to all people that a particular vehicle simply cannot be repaired or parts replaced so that the same is made free of defect. *General Motors Corporation v. Earnest*, 279 Ala. 299, 184 So.2d 811 (1966)."

*Orange Motors of Coral Gables, Inc. v. Dade County Dairies, Inc.*, 258 So.2d 319, 320–21 (Fla.App.1972) (quoted in *Murray v. Holiday Rambler, Inc.*, 83 Wis.2d 406, 420–21, 265 N.W.2d 513, 521 (1978)). The evidence supports the trial court's finding that the value of the motor home was substantially impaired as to the appellees and the acceptance was induced by Jimmy GMC's assurance that the motor home was a conforming good.

Jimmy GMC also argues that appellees gave untimely notice of revocation because the revocation letter was sent some four months after the sale and two months after appellees had last complained about any defects. Appellees sent their letter of revocation to Jimmy GMC on September 6, 1977.

A.R.S. § 44–2371 requires notice of revocation within a "reasonable time" after the buyer discovers or should have discovered the basis for revocation. "What is a reasonable time for taking an action depends on the nature, purpose and circumstances of such action." A.R.S. § 44–2211(B). "The obvious policies behind the notice provisions are to give the seller an opportunity to cure, to permit the seller to assist the buyer in minimizing the buyer's losses, and to return the goods to seller early, before they have substantially depreciated." J. White and R. Summers, *Uniform Commercial Code* § 8(3), at 261 (1972).

In the instant case, appellees gave Jimmy GMC several opportunities to cure defects in the two months after purchase. When a delay in notification is due to a series of complaints and attempted repairs, the delay is not unreasonable. *Conte v. Dwan Lincoln-Mercury, Inc.*, 172 Conn. 112, 374 A.2d 144 (1976); *Murray v. Holiday Rambler, Inc.*, 83 Wis.2d 406, 265 N.W.2d 513 (1978); J. White and R. Summers, *Uniform Commercial Code* § 8(3), at 262 (1972).

It is true that no complaints were made or repairs attempted in July and August of 1977. But we do not find this delay unreasonable, either, especially because it did not substantially prejudice Jimmy GMC. Two months is not an unreasonable time for consumers to decide a product's defects are incurable and to seek legal advice. Any substantial change in the condition of the vehicle during this period was due to its own defects. If Jimmy GMC had regained possession of the motor home during this period, its attempts to repair the vehicle for resale presumably would have been no more successful than the repairs it did attempt in an effort to settle this case in April and May of 1978. We find the trial court's decision on this issue supported by the evidence.

---

**10.** Months after appellees sent a notice of revocation, appellants performed more repairs on the vehicle. They spent a half hour at appellees' residence starting the vehicle, and then worked on it for another forty-eight days. Some defects were cured, but others were not. These repairs were an attempt to settle the case outside the court system. We strongly encourage such actions. But because these repairs occurred after revocation, they are relevant only to mitigation of damages and not the grounds for revocation. Although appellees continued to use the motor home during the course of these negotiations, the use was with appellant's consent and was not a waiver of revocation.

Therefore, the trial court was correct in granting revocation of acceptance against Jimmy GMC. Because incidental and consequential damages may be awarded in conjunction with revocation of acceptance, *Mobile Home Sales Management, Inc. v. Brown*, 115 Ariz. 11, 562 P.2d 1378 (App. 1977), and the evidence supports the damages awarded, we affirm both the revocation and the damages awarded against Jimmy GMC.

## LOSS OF USE DAMAGES

At trial, appellees requested $14,800.00 in loss of use consequential damages under A.R.S. § 44–2394(B). For a reason not stated in the record, the trial court declined to award such damages. On appeal, appellees renew their request for loss of use damages.

As we have stated above, consequential damages may be awarded in a case where revocation of acceptance is granted. *See Mobile Home Sales Management, Inc., supra.* Loss of use damages are appropriate if the seller had knowledge of the buyer's intended use of the goods at the time of contracting, A.R.S. § 44–2394(B), and the buyer proves that there are periods during which the goods would have been used but were not because of defects that the buyer, in good faith, was waiting for the seller to cure. *Murray v. Holiday Rambler, Inc.*, 83 Wis.2d 406, 265 N.W.2d 513 (1978). Damages are recoverable only for those days the goods would have been in use. *Id.* Although the buyer may "cover", A.R.S. § 44–2391(A), and thereby ease the difficulty of proving the amount of damages, failure to cover does not bar loss of use damages. A.R.S. § 44–2391(C).

In the instant case, we do not know whether the trial court found loss of use damages were not available either as a matter of law or because appellees failed to sustain their burden of proof on the issue. We hold that loss of use damages are available as a matter of law and remand to the trial court for a consideration whether appellees have sufficiently proved them.

## CONCLUSION

We approve the Court of Appeals' opinion to the extent it found as a matter of law that revocation of acceptance was not available against Beaver Coaches, Inc. Further, we approve the remand for a determination, in the trial court's discretion, of an award of costs and attorney's fees in favor of Beaver Coaches, Inc. We vacate the remainder of the Court of Appeals' opinion. We affirm the trial court's grant of revocation of acceptance and award of $14,885.10 in incidental and consequential damages against Jimmy GMC of Tucson, Inc. The case is remanded to the trial court with instructions to consider whether appellees proved loss of use damages against Jimmy GMC of Tucson, Inc.

The opinion of the Court of Appeals is approved in part and vacated in part, the actions of the trial court are affirmed in part and reversed in part, and the case is remanded to the trial court for further proceedings consistent with this opinion.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and CAMERON, JJ., concur.