**Earl MULLER, Plaintiff,**

v.

**WINNEBAGO INDUSTRIES, INC., Defendant.**

**No. CV03–1417–PHX–FJM.**

United States District Court, D. Arizona.

May 14, 2004.

Marshall Meyers, Krohn & Moss Ltd., Phoenix, AZ, for Plaintiff.

Kerry Matthew Griggs, Cavanagh Law Firm PA, Negatu Molla, Esq., David Wendall Williams, Bowman & Brooke, Brian J. Foster, Esq, Craig Aaron Logsdon, Snell & Wilmer LLP, James K. Kloss, Esq, Lewis & Roca LLP, Phoenix, AZ, for Defendant.

## ORDER

MARTONE, District Judge.

The court has before it Defendant Workhorse Custom Chassis' ("Workhorse") Motion to Dismiss for Lack of Subject Matter Jurisdiction (doc. 46), Plaintiff's Response (doc. 54), Workhorse's Reply (doc. 61), and the parties' supplemental memoranda (docs. 74 and 75). For the reasons set forth below, we deny Workhorse's motion.

### I. Introduction

Plaintiff purchased a "Winnebago" motor home from an authorized dealer in Arizona for approximately $200,000. The motor home was manufactured by Winnebago, although certain component parts were manufactured by other defendants.

Workhorse, for example, manufactured the chassis.

Plaintiff purchased the motor home under several express warranties. Plaintiff alleges that Winnebago's express warranty covered the motor home from "bumper to bumper" for one year. The component manufacturers, such as Workhorse, provided limited written warranties covering specific components. Workhorse's warranty covered the chassis of the motor home.

Plaintiff alleges that, shortly after the purchase, he began experiencing difficulties with the motor home, and that Defendants failed to repair the alleged defects. He now brings this action, seeking damages or a refund of monies paid pursuant to the Magnuson–Moss Warranty Act (the "Act"), 15 U.S.C. § 2301, et seq.

Defendant Workhorse moves to dismiss for lack of subject matter jurisdiction on two grounds. First, Workhorse argues that the amount in controversy falls short of the $50,000 required by the Act. Second, Workhorse argues that Plaintiff's failure to exhaust Workhorse's informal dispute resolution ("IDR") procedure precludes a civil action. For the reasons set forth below, we conclude that the amount in controversy exceeds $50,000. We further conclude that, because Workhorse's IDR procedure does not comply with the requirements of the Act, Plaintiff was not required to resort to IDR before filing this action.

## II.  Amount in Controversy

■ Plaintiff's complaint satisfies the Magnuson–Moss Warranty Act's amount in controversy requirement. Plaintiff alleges that he purchased the motor home for nearly $200,000. He seeks a refund of all monies paid.[1] Because the Act's jurisdictional requirement is only $50,000, 15 U.S.C. § 2310(d)(3), we conclude that

Plaintiff's complaint for $200,000 is sufficient.

We reject Workhorse's contention that the amount in controversy should be measured separately with respect to each component manufacturer. While the value of Plaintiff's individual claims against individual component manufacturers may not meet the $50,000 requirement, that is not the standard. The proper measure of the jurisdictional requirement is the total amount disputed with respect to the product purchased, not its component parts.

The statutory language is instructive on this point. The statute distinguishes between, and contains separate standards for, components and the whole product. Subsection (A) of the amount in controversy requirement mandates that the value of each "individual claim" must equal or exceed $25. 15 U.S.C. § 2310(d)(3)(A). This seems to apply to component manufacturers, particularly when contrasted with Subsection (B), which specifically provides that the amount in controversy is to be "computed on the basis of all claims to be determined in this suit." 15 U.S.C. § 2310(d)(3)(B).

The distinction between the subsections supports the common sense notion that the product purchased, not the component manufactured, should be the proper measure of the jurisdictional requirement. None of the cases decided under the Magnuson–Moss Warranty Act suggest otherwise. Workhorse therefore suggests that we should defer to diversity jurisdiction principles deriving from 28 U.S.C. § 1332. But the language of § 1332 is quite different from that of § 2310. Section 1332 does not distinguish between "individual claims" and "all claims to be determined,"

---

1. As discussed in Part III, infra, Plaintiff's damages may include a refund, consequential damages or other remedies. They are not necessarily limited to repair or replacement parts.

as the Magnuson–Moss Warranty Act does.

We think that the differences between § 1332 and § 2310, like the differences between § 2310(d)(3)(A) and § 2310(d)(3)(B), are purposeful. Moreover, the rule of law suggested by Workhorse would lead to absurd and unworkable results. We have no doubt that Congress intended the product to be the measure of the amount in controversy requirement. Particularly in this age of outsourcing, where a product may have dozens of component manufacturers, it would be unduly burdensome to require claimants, who choose to sue entities in addition to the ultimate seller, to file separate lawsuits for each component. The amount in controversy is determined with reference to the motor home and not its component parts.

### III. IDR Exhaustion

■ Section 3210(a)(3) of the Magnuson–Moss Warranty Act provides that, where the warrantor has provided a valid informal dispute resolution ("IDR") mechanism, a claimant must exhaust IDR before filing suit. 15 U.S.C. § 2310(a)(3). Plaintiff admits that he did not participate in IDR. But he challenges the validity of Workhorse's mechanism under 16 C.F.R. § 703, promulgated by the Federal Trade Commission pursuant to § 2310(a)(3).[2] Workhorse contends that its IDR mechanism complies with § 703. Moreover, Workhorse argues that the doctrine of primary jurisdiction precludes us from reviewing § 703 compliance until the Commission has first addressed the issue.

#### A.

The prudential doctrine of primary jurisdiction is "properly invoked when a claim is cognizable in federal court, but requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory industry." *Brown v. MCI WorldCom Network Services, Inc.*, 277 F.3d 1166, 1172 (9th Cir.2002). The doctrine is applicable in cases presenting "a far-reaching question that requires expertise or uniformity in administration." *Id.* (internal quotations and citations omitted). The doctrine is most appropriate for cases demanding agency expertise or specialized knowledge, or those cases presenting novel questions of complex regulatory law.

■ This is not such a case. There are no issues necessitating agency expertise. Compliance with § 703 is not particularly complex. The Commission itself deemphasizes its role in interpreting and enforcing the regulations. 64 F.R. 19700, 19708 (1999). Moreover, many state lemon laws expressly incorporate § 703 by reference, and there is no indication that the state courts have had any particular difficulty evaluating compliance. *Id.*

Moreover, this case does not present novel or far-reaching questions of regulatory law. Rather, it is a straightforward application of the regulation to the facts of this case. Indeed, as the discussion below demonstrates, the parties' arguments regarding § 703 compliance focus primarily on the common law of warranties in Arizona. Courts, in contrast to administrative agencies, have primary, if not exclusive, jurisdiction to develop the common law. The doctrine of primary jurisdiction, therefore, affords no basis to grant Workhorse's motion.

#### B.

Plaintiff contends that Workhorse's IDR mechanism is defective for two primary

---

**2.** Section 2310(a)(3) provides that compliance with the Commission's rules, promulgated pursuant to § 2310(a)(2), is necessary before a warrantor can compel first resort to an IDR procedure.

reasons. First, Plaintiff argues that it has not been audited as required by 16 C.F.R. § 703.7. Second, Plaintiff contends that the IDR mechanism fails to allow the necessary remedies for successful claimants, as required by 16 C.F.R. § 703.5. We agree with both points.

### 1.

■ Section 703.7 requires that IDR mechanisms "shall have an audit conducted at least annually." Workhorse contracted with the Better Business Bureau to participate in its "Auto Line" IDR mechanism. The Auto Line mechanism is subject to yearly audits. But Plaintiff points out that these audits specifically exclude an evaluation of Workhorse's participation in the program. *Exhibit B* to Plaintiff's Response, Chapter 1, Page 4 of the Auto Line Audit ("These manufacturers' materials were not evaluated...Workhorse Custom Chassis").

Workhorse contends that § 703.7 only requires that "the Mechanism" be subject to an annual audit, that Auto Line is the mechanism, and that therefore the Auto Line audit is sufficient. We disagree. While § 703.7 does state that "the Mechanism shall have an audit," the regulation further specifies that the audit must include information specific to the warrantors. Section 703.7(b)(1) requires the audit to contain an "evaluation of warrantors' efforts to make consumers aware" of the Mechanism. Similarly, § 703.7(b)(2) requires that the audit review records maintained pursuant to § 703.6, which includes warrantor-specific information regarding compliance with, *inter alia*, IDR decisions. Because the Auto Line audit specifically excludes an evaluation of Workhorse's participation, we conclude that the Auto Line audit is not sufficient.

Workhorse also provides three decisions of state regulators that have apparently evaluated Workhorse's compliance with § 703. Without more, we conclude that these audits are insufficient. The first is simply a statement by the Florida Department of Agriculture that is believes that Workhorse complies with § 703. *Exhibit 4* to Workhorse's Reply. But this statement does not, on its face, meet the requirements of a § 703 audit. There is no evidence that it was submitted to the Commission (as required by § 703.7(c)), and it does not provide all of the information required by § 703.7. Workhorse' second "audit" is a statement by the Ohio Attorney General that Workhorse and Auto Line comply with Ohio state laws. *Exhibit 5* to Workhorse's Reply. No reference is made to compliance with § 703. Finally, while Workhorse does provide a more comprehensive audit conducted by California regulators, that audit is directed to California laws and not § 703. *Exhibit 6* to Workhorse's Reply. Workhorse has not provided any evidence that compliance with California law is equivalent to compliance with § 703. Moreover, Workhorse has not provided evidence that the California audit was submitted to the Commission pursuant to § 703.7(c).

Workhorse fails to provide evidence that any of these audits meet all of the requirements of § 703. Accordingly, we conclude that they do not. Workhorse does not explicitly argue that piecemeal audits by diverse agencies under varying mandates can satisfy the requirements of § 703.7. Nor have we found any authority for that proposition. Accordingly, we conclude that Workhorse has not complied with the audit requirements of § 703.

### 2.

Moreover, we conclude that the Auto Line program itself fails to meet the substantive requirements of § 703, at least with respect to disputes in Arizona. Arizona law allows for consequential damages, as well as diminution in value damages, for breach of warranty claims. *Seekings v.*

*Jimmy GMC of Tucson, Inc.,* 130 Ariz. 596, 638 P.2d 210 (1981). The Auto Line program does not. Because the Act requires IDR mechanisms to allow all remedies available under state law, this exclusion renders Auto Line, and therefore Workhorse, noncompliant.

Section 703.5(d)(1) provides that IDR mechanisms must allow successful claimants "any remedies appropriate under the circumstances." The parties agree that appropriate remedies are determined with reference to state law. Workhorse's Supplemental Memorandum at 8, lines 1–5; Plaintiff's Supplemental Memorandum at 6, lines 9–12. Workhorse does not dispute that the IDR mechanism must allow all remedies under Arizona law.

Instead, Workhorse argues that repair or reimbursement for the cost of repairs is the sole measure of damages under Arizona law. This is not correct. Arizona law allows breach of warranty actions for non-U.C.C. warranties[3] such as Workhorse's limited warranty. *Seekings,* 130 Ariz. 596, 638 P.2d 210. We conclude that, even where the manufacturer's limited warranty excludes consequential damages,[4] such damages may be available if the exclusive or limited remedy fails of its essential purpose. Such damages area available under Arizona's Uniform Commercial Code. A.R.S. § 47–2719. While Workhorse correctly points out that this not a U.C.C. warranty, we conclude that the Arizona Supreme Court would apply similar principles to limit disclaimers of damages in this case.[5] That court neither favors

privity nor wants to see the law evolve separately in this area.

Because the Auto Line IDR mechanism expressly excludes damages that could be available under Arizona law, we conclude that the program does not meet the requirements of § 703.5(d)(1). We therefore conclude that Plaintiff is not required to exhaust the IDR mechanism before filing this action.

### IV.  Conclusion

In our earlier Order dated April 21, 2004, we declined to consolidate this case with several others. There were procedural differences among the cases that made consolidation inconvenient. However, we noted that our decision in this case might have a preclusive effect in the other cases. We remind the parties of this statement, and encourage them to take appropriate action in the other pending cases. This will satisfy their interest in unitary adjudication.

Finally, we note that two other motions are pending in this case, Plaintiff's Motion to Strike (doc. 53) and Plaintiff's Rule 56(f) Motion to Conduct Discovery (doc. 54). We deny Plaintiff's Motion to Strike the affidavit of Alan Cohen. While we do not find the Affidavit helpful, except perhaps as evidence that the Better Business Bureau believes it has complied with § 703, we see no basis to strike it. We also deny Plaintiff's Rule 56(f) Motion. This motion was implicitly denied by our April 21 Order, and is, in any event, now moot.

---

**3.** Under *Flory v. Silvercrest,* 129 Ariz. 574, 633 P.2d 383 (Ariz.1981), manufacturers' warranties such as Workhorses lack privity and are therefore not warranties covered by the Uniform Commercial Code.

**4.** Without such a disclaimer, breach of a non-U.C.C. warranty would normally allow for such special damages. *Seekings,* 130 Ariz. at 601, 638 P.2d 210.

**5.** The *Seekings* court borrowed from U.C.C. principles to allow limitations of damages clauses in a non-U.C.C. case. *Seekings,* 130 Ariz. at 601, 638 P.2d 210. We believe that the court would similarly borrow from U.C.C. principles to define when such limitations would fail of their essential purpose.

IT IS ORDERED DENYING Workhorse's Motion to Dismiss for Lack of Subject Matter Jurisdiction (doc. 46).

IT IS FURTHER ORDERED DENYING Plaintiff's Motion to Strike (doc. 53) and Plaintiff's Rule 56(f) Motion to Conduct Discovery (doc. 54).