**Charles DE SHAZER, Plaintiff,**

v.

**NATIONAL RV HOLDINGS, INC. and Freightliner Custom Chassis Corporation Defendants.**

**No. 03–CV–869–PHX–FJM.**

United States District Court,
D. Arizona.

July 25, 2005.

792

Jack Gunn, Marshall Scott Meyers, Krohn & Moss Ltd., Phoenix, AZ, for Plaintiff.

Scott Michael Deeny, William M. Shattuck, Quarles & Brady Streich Lang LLP, John Charles Hendricks, Kenneth Carlton Spafford, Steven Matthew White, Stinson Morrison Hecker LLP, Phoenix, AZ, for Defendants.

## ORDER

MARTONE, District Judge.

Before the court are Defendant National RV Holdings, Inc.'s Motion for Summary Judgment (doc. 116), Plaintiff's Response (doc. 131), Defendant National RV Holdings, Inc.'s Reply (doc. 148), Defendant Freightliner Custom Chassis Corporation's Motion for Summary Judgment (doc. 118), Plaintiff's Response (doc. 143), Defendant Freightliner Custom Chassis Corp.'s Reply (doc. 149), Plaintiff's Second Motion to Supplement Plaintiff's Response to Defendants' Motions for Summary Judgment (doc. 156), Defendant National RV's Response (doc. 158), Defendant Freightliner's Response (doc. 159), and Plaintiff's Reply (doc. 160).

On or about January 8, 1999, Plaintiff purchased a 1999 Tradewinds 7370 recreation vehicle (Tradewinds) from Beaudry RV.[1] National RV's Statement of Facts (NSOF) ¶ 1. National RV is a final stage manufacturer of recreational vehicles that manufactures some, but not all, components and systems and integrates them into a final product. NSOF ¶ 3. Freightliner supplied and warranted the vehicle's chassis. Freightliner's Statement of Facts (FSOF) ¶ 3. Plaintiff's complaint alleges fifty-one defects in his motor home. Plaintiff's Amended Complaint ¶ 8. Plaintiff claims that these defects constitute a breach of various warranties by National RV and Freightliner. Complaint ¶ 18. Defendants move for summary judgment individually. Freightliner argues Plaintiff's claim fails because he can not demonstrate that Freightliner breached its warranty by

---

1. The parties do not tell us the status of Plaintiff's claims against the seller.

supplying a defective chassis component. National RV argues summary judgment is appropriate because the alleged defective components are either 1) already fixed to Plaintiff's satisfaction, 2) expressly excluded from the language of National RV's limited warranty coverage, 3) Plaintiff would not allow National RV's expert to inspect the alleged defects, or 4) expert inspection revealed that the alleged defects are not defective.

## I. Applicable Law

■ The Magnuson–Moss Warranty Act (MMWA) creates minimum disclosure and content requirements for written consumer product warranties. 15 U.S.C. § 2301 *et. seq.* Additionally, the MMWA authorizes a private right of action by a consumer when a warrantor has failed "to comply with any obligation under … a written warranty, implied warranty, or service contract." § 2310(d)(1); *Milicevic v. Fletcher Jones Imports, Ltd.,* 402 F.3d 912, 917 (9th Cir.2005). However, while the MMWA creates additional requirements for consumer protection warranties and creates a private cause of action for breach of a warranty, "state warranty law lies at the base of all warranty claims under Magnuson–Moss." *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1016 (D.C.Cir. 1986).

The parties disagree as to which state's law applies to Plaintiff's claims.[2] Because the parties have not agreed to a choice of law provision, we look to the Restatement of Conflicts which states:

> The validity of a contract for the sale of an interest in a chattel and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where under the terms of the contract the seller is to deliver the chattel unless,

with respect to the particular issue, some other state·has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 191 (2005). Section 6 outlines other factors in determining which state law to apply, including, "the needs of the interstate and international systems," "the relevant policies of the forum," "the relevant policies of the interested states and the relatives interests of those states in the determination of the particular issue," "the protection of justified expectations," "certainty, predictability and uniformity of result," and "ease in the determination and application of the law to be applied." *Id.* § 6.

■ Plaintiff argues that because the motor home was delivered to him in New Mexico, under the Restatement analysis, New Mexico law should apply. Defendants argue that Arizona law applies because Arizona has a much more significant relationship to the transaction and the parties. Defendants state that the contract for sale was negotiated and executed in Arizona, Plaintiff lives in Arizona, many of the repairs were done in Arizona and Plaintiff chose to prosecute this case in Arizona. We agree with the Defendants that the law of Arizona should apply because of the significant relationship of the parties and the transaction to Arizona.

■ Although the amended complaint is not very precise, it appears that Plaintiff brings his claim pursuant to federal statutory requirements and Arizona common law. The parties agree that because there is no privity of contract between Plaintiff and Defendants, the Uniform Commercial Code does not apply. However, lack of

---

**2.** Although they do not show a substantive     conflict, and thus it appears not to matter.

privity between a manufacturer and retail purchaser does not preclude a claim outside the U.C.C. for breach of express warranty. *Flory v. Silvercrest Industries, Inc.*, 129 Ariz. 574, 633 P.2d 383 (1981), *Seekings v. Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 601, 638 P.2d 210, 215 (1981). Therefore, Plaintiff may state a claim for breach of an express warranty against both Defendants.

██ Plaintiff further asserts the he is bringing his claim for breach of an implied warranty pursuant to Arizona common law, and thus the privity requirement of the U.C.C. does not apply. In *Flory,* the court stated, "[a]lthough we allow recovery for 'breach of implied warranty' without privity under the theory of strict liability, plaintiffs can not recover purely economic damages under that theory. And although we allow recovery for purely economic damages for breach of U.C.C. warranties, plaintiffs can not recover under that theory . . . due to their lack of privity with that defendant." *Flory* 633 P.2d at 388. Because Plaintiff's damages here are purely economic, and he is not in privity of contract with the Defendants, he can not recover under a theory of breach of implied warranty.

## II.  National RV

National RV is the final stage manufacturer of recreational vehicles. It manufactures some, but not all, components and systems of the motor home and integrates all of them into a final product. National RV categorizes each of Plaintiff's alleged defects into four groups: 1) those which have already been repaired, 2) those Plaintiff stated he has no memory of in his deposition, 3) those which are specifically excluded from coverage under National RV's limited warranty, 4) those Plaintiff refused to allow National RV's expert witness to inspect, and 5) those identified by the expert as being free from defects. NSOF ¶¶ 7–11.

### a.  Scope of Coverage

National RV provided Plaintiff with a "Limited One–Year/Three–Year Warranty." The parties dispute whether the warranty covers the alleged defects. The warranty, in relevant part, states:

**WARRANTY COVERAGE:** This warranty covers your motor home, which includes the structural components, plumbing, air-conditioning/heating, and electrical systems fabricated, assembled or installed by National RV Inc., to be free under normal use from manufacturing defects in material or workmanship.

**ITEMS COVERED UNDER SEPARATE WARRANTIES:** Your motor home contains numerous appliances that are covered by their respective manufacturer warranties. Please refer to the individual owner's manuals provided at the time of delivery for all pertinent information. Items covered under separate warranties include but are not limited to; microwave, stove, furnace, refrigerator, water heater, roof-mounted air-conditioner, etc.

**ITEMS NOT COVERED:** The following items are not covered by this warranty:

> 1.  Chassis components; drive train components, tires, portions of the automotive air-conditioning system, and batteries. These items are covered by the warranties of their respective manufacturers

> .      .      .      .      .

> 3.  Fading of fabrics, drapes, and carpets cause by normal wear and exposure.

> .      .      .      .      .

5. Routine maintenance and service items i.e. fuses, light bulbs, wiper blades, lubricants, gaskets, etc.

6. Costs to transport motor home to and from dealer or manufacturing plan location, loss of time, loss of use, towing charges, vehicle rent, telephone charges, lodging, fuel charges, commercial loss, or any other incidental or consequential damages.

7. Fading or cracking of exterior decals/graphics caused by normal wear and exposure.

NSOF ¶ 6.

Plaintiff argues that National RV sold the Tradewinds motor home as one complete product and thus this court should not analyze whether each defect was covered by the warranty, but rather we should view the motor home as a single product. Plaintiff points to the warranty which expressly covers everything "fabricated, assembled or installed" by National RV, and argues this includes everything. Plaintiff additionally argues that although National RV's warranty states that certain items are covered under separate warranties, it does not state that these items are excluded from its own warranty. Plaintiff contends the language "items not covered" is ambiguous and should be construed against National RV. Plaintiff goes on to argue that National RV adopted the warranties of the various components of the motor home though advertising, pre-sale representations and common sense, and thus the doctrine of equitable estoppel prevents National RV from assigning blame elsewhere. Finally, Plaintiff points to various repairs on purportedly non-included items, such as the toilet, refrigerator, and air conditioner made by National RV as further proof that National RV is responsible for all motor home components.

■ Under the warranty, certain portions of the motor home are warranted by National RV, some items are "covered under separate warranties" and some are "not covered." While National RV certainly sold the Tradewinds motor home as one complete unit, the warranty does specifically exclude some items from coverage. We agree with Plaintiff that there is an ambiguity as to whether those items labeled as "covered under separate warranties," are also covered by National RV. Thus, as a matter of law, we construe this ambiguous language against the drafter and find that the items listed in the "covered under separate warranties" section are not specifically excluded from National RV's warranty. *Darner Motor Sales, Inc. v. Universal Underwriters Insurance* Co., 140 Ariz. 383, 400, 682 P.2d 388, 405 (1984) (holding that under Arizona Law, ambiguous terms in a contract are to be construed against the drafter). We therefore look to the plain language of the warranty and the facts of record to determine whether the warranty covers each of Plaintiff's alleged defects.

National RV argues that nine of Plaintiff's alleged defects have already been repaired or have been withdrawn. These are: 1) defective paint, 2) defective radio, 3) defective carbon monoxide detector, 4) defective steering/suspension, 5) defective bathroom wall, 6) defective VCR, 7) defective screen door, 8) defective interior trim, and 9) defective dinette seat. NSOF ¶ 7. Plaintiff responds that 1) he fixed the defective paint himself, 2) he is on the fourth radio and does not know if it will continue to work, 3) the carbon monoxide detector does not work, 4) he had to buy new tires and vibration of the unit continues to be a problem, 5) the wallpaper was not repaired to his satisfaction, 6) he replaced the VCR himself, 7) the screen door is fixed, 8) he can not confirm the trim is fixed, and 9) the dinette seat has been repaired. Plaintiff's Statement of Facts (PSOF) ¶ 7.

There is an issue of material fact as to whether National RV violated the warranty agreement with respect to those items which Plaintiff states have not been properly fixed.

██ National RV argues that Plaintiff stated in his deposition that he had no memory of nine other defects, including 1) defective brake lights, 2) defective shelf, 3) defective head light, 4) defective output temperature, 5) defective storage shelf, 6) defective light, 7) defective compartment door, 8) defective ventilation system and 9) defective oven. NSOF ¶ 8. Plaintiff responds that although he stated in his deposition that he did not remember these alleged defects, this was not an admission that the defects did not exist. Rather, he was unable to remember these specific defects because the entire motor home contained over 100 defects, and he was not provided access to his repair order when he was being questioned. PSOF ¶ 8. Plaintiff provides evidence of these defects in repair orders attached to his affidavit, and denies that any of them have been fixed. PSOF ¶ 8. A factual dispute exists.

National RV next argues that fourteen of Plaintiff's alleged defects are specifically excluded from coverage under its limited warranty including, 1) defective refrigerator, 2) defective water heater, 3) defective electrical system, 4) defective water pump, 5) defective toilet, 6) defective generator, 7) defective engine, 8) defective heater, 9) defective brakes, 10) defective leveling jacks, 11) defective air-conditioner, 12) defective shower, 13) defective sink, and 14) defective passenger seat. NSOF ¶ 9. Plaintiff responds that each of these defects are listed as "Standard Features" of the Tradewinds Motor Home and thus should be covered under National's warranty that covers "your motor home." The language of National RV's limited warranty classifies 1) refrigerator, 2) wa-ter heater, and 3) generator as "items covered under separate warranties," but not as "items not covered." Additionally, the warranty specifically covers plumbing systems (water pump, toilet, shower, sink), electrical systems, and air-conditioning/heating systems fabricated, assembled or installed by National RV. National RV's warranty does not exclude the engine, brakes, leveling jacks, and passenger seat defects. Any uncertainty is resolved against the drafter and in favor of coverage. There are issues of material fact on these defects.

National RV alleges that 13 items listed in the Amended Complaint were identified by their expert witness, Steve Roddy, as being free from defects, 1) map lights, 2) frame, 3) cabinets, 4) drawers, 5) front end cap, 6) roof ladder, 7) level indicator, 8) roof, 9) awning, 10) latch, 11) exterior trim, and 12) pilot chair. NSOF ¶ 11. Plaintiff disputes these items are defect-free claiming 1) the map light defect is of an intermittent nature and still present, 2) frame defect is linked to windshield, roof, and front end cap defects and are not fixed, 3) Roddy implies the cabinet finish defects are the result of dirt or cleaning chemicals, and Plaintiff refutes this implication, 4) the drawer defect occurs when driving the motor home and Roddy did not drive it and can not opine on this defect, 5) front end cap related to frame issues, 6) the roof ladder mounting screws keep pulling from the roof, 7) Roddy's report infers the level indicator is not reading properly and requires adjustment, but repair history indicates adjustments do not correct the defect, 8) roof related to frame issues, 9) awning extends on its own when driving, and thus Roddy can not opine on this defect, 10) Roddy indicated the latch may need maintenance, 11) Plaintiff's exterior trim complaints extend beyond the decal on the driver's side to include paint repair,

12) Roddy confirmed the pilot's chair wobbles and was not stable, 13) windshield relates to structure issues. PSOF ¶ 11. There are issues of material fact as to whether these alleged defects have been properly fixed.

National RV next argues that Plaintiff refused to allow its expert witness, Roddy, to inspect 1) the alleged defective slide-out, and 2) the alleged defective water tank. NSOF ¶ 10. Plaintiff disputes these allegations, and states that he told Roddy that he believed the vehicle to be unsafe, but that Roddy could drive it at his own risk. Plaintiff refutes that he ever said the slide out and leveling jacks could not be operated. There are factual disputes.

There are disputed issues of material fact as to the defects which are not expressly excluded from the warranty language, consistent with the above analysis.

### b. Reasonable Opportunity to Cure

In the alternative, National RV argues that if Plaintiff's alleged defects are covered by the limited warranty, it has not had a reasonable opportunity to cure those defects. A prerequisite to bringing a claim under the MMWA is that "the person obligated under the warranty or service contract [must be] afforded a reasonable opportunity to cure such failure to comply." 15 U.S.C. § 2310(e). National RV argues the defective toilet is the only defect about which National RV has had more than two opportunities to correct. NSOF ¶ 12. Additionally, National RV had two opportunities to repair only four defects, the radio (which it argues works now), refrigerator (argues not covered), air-conditioner (argues not covered) and level indicator (argues works fine). Therefore, it argues, because it has not been given a reasonable opportunity to repair the covered defects, summary judgment is appropriate.

■ Plaintiff responds that in the first 10 months and 10,000 miles of ownership, his motor home had 11 separate repair visits for more than 60 defects. PSOF ¶ 3. Over the next two years, Plaintiff's motor home was repaired an additional 13 times for over 100 alleged defects. PSOF ¶ 3. There are disputed issues of material fact as to whether National RV has had sufficient opportunity to cure the alleged defects. Thus summary judgment is not appropriate.

### III. Freightliner

■ Freightliner is the supplier and warrantor of Plaintiff's Motor Home chassis. Freightliner provided Plaintiff with a "New Vehicle Limited Warranty" which states:

> [E]ach new Freightliner chassis, with the exception of certain excluded components and parts, will be manufactured to the specifications agreed upon and will be free from defects in material and workmanship which appear under normal use and service, subject to different time or distance limitations for specific components and parts as set forth in the appropriate graphs. This warranty applies only to chassis sold and domiciled in the U.S. and Canada.

> This warranty does not apply to engines, Allison transmissions, tires, or other components or parts which are not manufactured by FCCC and which are warranted directly by their respective manufacturers, or to routine maintenance requirements as described in this book. With respect to the foregoing, FCCC makes no warranty whether express, implied, statutory or otherwise including, but not limited to, any warranty of merchantability or fitness for purpose.

FSOF ¶ 5. Freightliner argues that the majority of Plaintiff's defects cannot possi-

bly relate to the chassis. FSOF ¶7. Freightliner's expert, Jody Adams, examined the vehicle, and in a report dated December 9, 2004, determined that the chassis did not contribute to the defects raised in Plaintiff's expert report or complaint. FSOF ¶9. Defendant further states that Plaintiff's expert only identifies potential vehicle issues and fails to allege that the chassis is the source of a defect, thus summary judgment is appropriate. FSOF ¶8. Plaintiff responds that there is substantial evidence to show the chassis is not defect-free. Additionally, Plaintiff argues that he, a lay consumer, does not bear the burden of pinpointing the precise source or cause of the defects in his motor home, citing *Dietz v. Waller*, 141 Ariz. 107, 685 P.2d 744 (1984). Plaintiff presents evidence to show a history of severe vibrations in the chassis and that Freightliner attempted to repair them. PSOF ¶¶3,6. Plaintiff's expert found there to be a defect in the "cage frame or chassis frame or both" causing the windshield to crack. PSOF ¶12. Plaintiff's expert further testified that the vibrations were still present and that during the inspection, Defendant's expert placed the vibration analyzer in an improper place. PSOF ¶12. There is an issue of material fact as to whether the chassis is defective and has been properly repaired.

## IV. Damages

Plaintiff seeks relief in the form of "a refund or replacement pursuant to 15 U.S.C. § 2310(d)(1) and return of all monies paid toward the subject vehicle, an award of diminution in value damages, any equitable relief to which Plaintiff may be entitled, all attorney fees, expert fees and court costs incurred during the commencement and prosecution of this matter, and all other relief deemed just and appropriate by this Court." Plaintiff's Amended Complaint at 4–5.

The MMWA states "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation … may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). Additionally, a consumer who prevails under the act may be allowed attorney's fees and costs. *Id.* § 2310(d)(2).

Though it is not entirely clear, seemingly Plaintiff's desired relief consists of state law remedies, and thus we look to Arizona law, because, under the MMWA, "[n]othing in this chapter shall invalidate or restrict any right or remedy of any consumer under State law or any other Federal law." 15 U.S.C. § 2311(b)(1). At common law, the standard remedy for breach of warranty is the diminished value, or the amount required to conform the goods to the warranty. *Isenberg v. Lemon*, 84 Ariz. 340, 327 P.2d 1016 (1958); *Reckart v. Avra Val. Air, Inc.*, 19 Ariz. App. 538, 540, 509 P.2d 231, 233 (1973). National RV argues that even if it breached an express warranty, Plaintiff may not recover damages for loss of use, incidental and consequential damages because those remedies are expressly excluded under the terms of the Limited Warranty. Similarly, the Freightliner Limited Warranty excludes certain damages such as special or consequential damages, loss of profits or loss of chassis use. But even where the manufacturer's limited warranty excludes consequential damages, such damages may be available if the exclusive or limited remedy fails in its essential purpose. *See Muller v. Winnebago Industries, Inc.* 318 F.Supp.2d 844, 849 (D.Ariz.2004). Such damages are available under Arizona's Uniform Commercial Code. A.R.S. § 47–2719. While the parties agree that this is not a U.C.C. warranty, Arizona would apply similar principles to limit disclaimers of

damages in this case.[3] There is an issue of material fact as to whether Defendants' limited remedy fails in its essential purpose.

Therefore, we find disputed issues of material fact as to whether Plaintiff's defects, not specifically excluded by the warranties provided by National RV and Freightliner, have been properly fixed. Additionally, we find a disputed issue of material fact as to whether Defendants' damages limitation fails in its essential purpose. Summary Judgment is therefore denied.

Finally, Plaintiff seeks leave to supplement his response to Defendants' Motion for Summary Judgment with *Turunen v. Elite Auto Body & Collision Center, et al.,* 2005 WL 851024 (N.D.Cal.2005). We grant Plaintiff's request.

**IT IS THEREFORE ORDERED, DENYING** Defendant National RV Holdings, Inc.'s Motion for Summary Judgment (doc. 116).

**IT IS FURTHER ORDERED, DENYING** Defendant Freightliner Custom Chassis Corporation's Motion for Summary Judgment (doc. 118).

**IT IS FURTHER ORDERED, GRANTING** Plaintiff's Motion to Supplement his Response to Defendants' Motions for Summary Judgment (doc. 156).

---

**3.** The *Seekings* court borrowed from U.C.C. principles to allow limitations of damages clauses in a non-U.C.C. case. *Seekings,* 130 Ariz. at 601, 638 P.2d at 210.